## The State v. Beard, *Appellant.*

### Division Two, February 12, 1895.

1. **Criminal Law**: EVIDENCE.  Self-serving statements made by one accused of crime are inadmissible in evidence in his behalf.

2. ———: ———.  Evidence of what a person present at the homicide, but not a witness, told another as to what occurred between such person and the deceased after the fatal blow had been struck, is inadmissible on the trial of defendant for such homicide.

3. ———: REASONABLE DOUBT.  A reasonable doubt of the guilt of some other person than the defendant on trial does not require the acquittal of the latter.

4. **Criminal Practice**: NEW TRIAL.  The action of the trial court in denying a new trial on the ground of newly discovered evidence approved.

*Appeal from St. Louis Criminal Court.*—Hon. H. L. Edmunds, Judge.

Affirmed.

*R. F. Walker,* Attorney General, and *C. O. Bishop* for the state.

(1)  The indictment is sufficient.  (2)  The testimony sought to be elicited 'from the witness Hodges was rightly excluded.  (3)  The statements of defendant to officer Fugles were self-serving and incompetent. (4)  The instructions given by the court fully covered the law of the case.  (5)  There is no merit in the claim of newly discovered evidence.  *State v. Duncan,* 116 Mo. 388; *State v. Welsor,* 117 Mo. 570; *State v. Campbell,* 115 Mo. 391.

Gantt, P. J.—The defendant was indicted at the October term, 1891, of the St. Louis criminal court, for

the murder of Ashley Jones, on September 11, 1891. He was duly arraigned at said term and entered his plea of not guilty; was allowed a separate trial at the January term, 1892, and, after a number of continuances of the cause, he was put upon his trial at the October term, 1893, when he was convicted of manslaughter in the third degree, and his punishment assessed at three years' imprisonment in the penitentiary. Motions for new trial and in arrest were successively overruled, sentence pronounced, appeal allowed, and appellant admitted to bail, pending same, in the sum of $3,000.

Notwithstanding appellant's ability to give bail and employ counsel in the criminal court, he has filed no brief nor submitted any sort of argument in this case, and, under the statute, we have been compelled to read the entire transcript to ascertain if material or prejudicial error was committed against him.

The testimony on the part of the state tended to prove substantially the following: Early on the morning of the eleventh day of September, 1891, about 5 o'clock, deceased (who lived in Arkansas and was on a visit to the city), in company with three others, encountered the appellant and his codefendant on a public street. There had been no previous acquaintance between the two parties, and the conversation that ensued upon the encounter related entirely to drinking, and resulted in Beard and Bernard inviting the other four to drink with them. The invitation was accepted, and Beard and Brown conducted the other four to a saloon kept by one Brady, of which saloon they were *habitues*.

The party ranged in front of the bar, but nothing was said for a minute or so. Bernard stood first, next to him Beard, and then deceased. One of the invited party then remarked: "Who said come and take a drink?" and, there being no reply, continued: "Well,

let's have a drink," and put some money on the counter, adding: "I think it is a nice way, though, to ask a man to take a drink and then have to pay for it yourself." As he made that remark, the appellant struck deceased on the side of the head with a baseball bat, felling him to the floor, raised the bat and struck another, when the three companions of deceased ran out of the saloon. After an ineffectual attempt to get an officer, they got a cab driver to go to the saloon and bring out the deceased; the latter at the time was unconscious and "limber as a rag," was driven to the city dispensary and thence to the city hospital. He never regained consciousness, but died on the thirteenth (two days later) at the hospital from compression of the brain, following a fracture of the base of the skull. Appellant and Bernard were arrested on the twelfth day of September (the day after the occurrence) at St. Charles.

At the close of the state's case, appellant "offered an instruction in the nature of a demurrer to the evidence," which was overruled, and exception saved. This instruction, however, does not appear in the record.

On behalf of the appellant there was testimony tending to show that his reputation for peace and quiet was good; that his occupation, when he had any, was that of a bartender; that on the morning of September 11 deceased and his three companions were standing on the corner of the street drinking from a bottle, and, as appellant and Bernard came by, invited the latter to join them in drinking from the bottle, which was declined, as they "were not drinking whisky." An invitation was then extended to Beard and Bernard to come round the "corner and drink anything you want," and the whole party went to Brady's saloon; drinks were ordered, and then a question arose as to who

should pay for them; deceased said to the appellant: "You ordered them," and appellant answered: "I did not order them and I don't intend to pay for them;" with that deceased called him a liar and struck him full in the face; that deceased and his companions were all drunk and noisy, and indulged in talk of being "a hell of a man from Arkansas," and about "cleaning out places;" that Bernard got the bat to defend himself, and appellant took it away from him and struck one of the companions of deceased on the arm; that deceased tripped over a spittoon and fell on the floor, while the others ran out; that Brady, the proprietor of the saloon, came in and then caught hold of the deceased, put him out of the saloon and beat him, and threw him violently down upon some stone steps.

The court instructed the jury that, if upon consideration of all the evidence, they should entertain a reasonable doubt of the commission of the homicide by appellant, Beard, it was their duty without proceeding farther to acquit him; also, upon murder in the second degree, manslaughter in the third and fourth degrees, self-defense, good character, credibility of witnesses, reasonable doubt; and also that if they believed and found from the evidence that the injuries inflicted upon deceased, and from which he died, were caused by the deceased's head being violently and forcibly thrown against the stone steps or curbing by one Brady, or any person other than defendant, they should acquit appellant.

The following instruction was asked by appellant and refused: "The court instructs the jury that if they believe and find from the evidence in the case that the injuries inflicted upon the deceased, and from which he subsequently died, were caused by the deceased's head being forcibly and violently thrown

against the stone steps or curbing and his skull fractured by one John Thomas Brady, or any other person than this defendant (or if the jury have a reasonable doubt whether the injuries were inflicted by the said Brady), then they must acquit the defendant.''

This is the instruction given by the court, with the exception of the part in parenthesis.

One of the grounds for new trial was that of newly discovered evidence since the trial; and affidavits were filed in support of this ground: the first (of one Samuel Jungling) is. simply cumulative of the testimony given for the appellant on the trial, and also tending to impeach one Lulu Coburn (a witness for the state); the second (of one Henry C. Baker) purports to give a statement made by one Mrs. Brady in his hearing, in which she claims to have seen the affair in the saloon; that her husband Brady struck deceased twice on the head with a beer mallet and he fell on the stone steps, and that Beard had nothing to do with it; the third (of one Mamie Graham) corroborates the second; the fourth (of one C. P. Tooley) corroborates the second also; the fifth (of one James R. Walsh), to the effect that Brady had admitted to him that he (Brady) had broken the skull of deceased with the beer mallet and thrown his head against the stone steps, and also to the effect that Lulu Coburn (a state's witness) had admitted to him that she knew Beard was innocent, but swore against him because she was afraid of Brady. The appellant did not file his own affidavit, alleging that he knew nothing of the purported evidence when he went to trial.

I. The record contains various exceptions to evidence, but they were all without merit. The attempt to prove by the officer defendant's own statements made two days after the assault was so clearly self-serving and incompetent that no sort of doubt can

exist as to the propriety of excluding them. Equally unjustifiable was the attempt to induce the court to permit witness Hodges to narrate statements of Brady, the saloon-keeper, as to what occurred between Brady and deceased after defendant had felled deceased to the floor with the bat, and all of the crowd but deceased had left the room, and Brady had led deceased from the room and out of the presence of Hodges. Brady was neither a party to or witness in the suit, and the statements were in no sense *res gestæ*.

There was no error in refusing the instruction as asked and in giving it as amended. It is not the law that if the jury had a reasonable doubt of Brady's guilt they must acquit defendant. The instructions were eminently fair to defendant, and were such as have often received our approval. Counsel for the state have made an admirable synopsis of the affidavits filed to obtain a new trial on the ground of newly discovered evidence, which we adopt:

"The affidavit of Jungling is not only cumulative merely, but absolutely contradicts the sworn testimony of Bernard and Hodges, appellant's witnesses, and as to the rest is intended to impeach state's witness, Lulu Coburn. The affidavit of Harry C. Baker is the merest hearsay, and, like Jungling's, at variance with the sworn testimony given by the defendant's witnesses on the trial; and is in nowise bettered by the corroborative affidavits of Mamie Graham and C. P. Tooley. The affidavit of James R. Walsh purports to give an admission of Brady (a third party) that *he* committed the offense charged against appellant. This affiant could not have given this testimony on the stand."

The defendant signally failed to bring himself within the rule of newly discovered evidence. *State v. Welsor*, 117 Mo. 570; *State v. Campbell*, 115 Mo. 391.

The verdict was amply sustained by the evidence and, no error of law appearing, the judgment is affirmed. All of this division concur.