## THE STATE v. PUNSHON, *Appellant.*

### Division Two, March 3, 1896.

1. **Criminal Practice:** SPECIAL JUDGE: STATUTE. The power of the members of the bar to elect a special judge, under Revised Statutes 1889, section 3323, depends solely on the failure of the regular judge to procure another in his stead, and the fact that he made no effort to do so is immaterial.

2. ———: MURDER: JUROR, COMPETENCY OF. Where, on a trial for murder, a juror states on his *voir dire* that he is in sympathy with the defendant and can not render a fair and impartial verdict without being influenced by what he has read in the newspapers and the opinion he has formed, he is rightly rejected as incompetent.

3. ———: ———: ———. One who states that he has no such conscientious scruples as would prevent him from finding a verdict of guilty in a case where the punishment is death, but that he would have such scruples if the evidence were wholly circumstantial, is not a competent juror.

4. ———: ———: EVIDENCE. Evidence that the deceased had threatened to commit suicide is inadmissible on a trial for murder.

5. ———: ———: ———. Evidence to prove the disordered condition of the mind of deceased is inadmissible on a trial for murder.

6. ———: REMARKS OF COUNSEL: HARMLESS ERROR. It is not reversible error for prosecuting counsel to say that a certain "note is competent evidence if not objected to," though on a former appeal it had been held inadmissible.

7. ———: MURDER: EVIDENCE: RES GESTAE. Evidence that after the deceased had been removed to the house of defendant's brother, defendant held her head, and before she died called her by name and asked her to tell him how she was shot, is not competent as part of the *res gestae.*

State v. Punshon.

8. ———: ———: ———: DEFENDANT'S CROSS-EXAMINATION. Where the defendant has testified on direct examination all about the homicide, inquiries made on cross-examination as to statements made by him before the coroner in regard to matters to which he had testified on direct examination are admissible.

9. ———: ———: EXPERT TESTIMONY. Where it is not shown that a witness in a murder case is an expert in regard to the use of firearms, his testimony for the purpose of showing that defendant could not have fired the fatal shot is not admissible.

10. ———: ———: EVIDENCE. An offer to prove a witness's malice and ill-will toward defendant by showing that she had defaced a picture of him, is inadmissible as being too remote and uncertain.

11. ———: ———: INSTRUCTION. An instruction that the legal presumption of defendant's innocence is intensified by the fact that defendant is accused of killing his wife is not made less favorable to him by the addition by the trial court of the words "provided the jury believe that they were friendly and that their relations were such as usually exist between husband and wife," where defendant claimed that deceased and he had lived happily together.

12. ———: ———: REMARKS OF COUNSEL. It is not error to permit counsel for the state to say to the jury, without being reprimanded: "Other men have killed their wives and children; it has been done many times before; it is no new thing."

*Appeal from Buchanan Criminal Court.*—BENJAMIN J. CASTEEL, ESQ., Special Judge.

AFFIRMED.

*Vories & Vories* and *Huston & Parrish* for appellant.

(1) The court was not legally organized as the judge of the criminal court did not endeavor, and hence did not fail, to secure the judge of some other circuit. *Stalling v. Thomas*, 18 S. W. Rep. 184; *Taylor v. Mason*, 9 Wheat. 344. (2) The court erred in excusing the jurors Imbrie and Gray. They were both competent. (3) The state in this case contends that the defendant killed the deceased. The theory of the

defendant is that the deceased committed suicide. One of these contentions is true. The evidence in the case was purely circumstantial; anything, therefore, tending to prove either contention, or that was calculated to throw any light on the manner of her death, was competent evidence. *State v. Moxley*, 102 Mo. 382; *State v. Leutz*, 45 Minn. 177; *Stewart v. State*, 19 Ohio, 302; *State v. Graham*, 46 Mo. 490; *State v. Sloan*, 47 Mo. 604; *State v. McNally*, 87 Mo. 644; *State v. Kennedy*, 121 Mo. 405; 1 Stark, Ev. [6 Ed.] 64. (4) The court erred in refusing to permit defendant to prove the disordered state of deceased's mind at, and prior to, the time of her death, and in rejecting the evidence offered by defendant for that purpose. *State v. Ludwig*, 70 Mo. 412; *State v. Young*, 119 Mo. 495; *State v. Leabo*, 84 Mo. 168; *Boyd v. State*, 14 Lea (Tenn.), 161; *Blackburn v. State*, 23 Ohio St. 146; *State v. Kring*, 64 Mo. 591; *Hall v. State*, 21 S. W. Rep. (Tex.) 368. This proof could only be made by the acts and declarations of the deceased, and the evidence offered tended to establish this fact. *State v. Kring*, 64 Mo. 591. This proposition is so well settled that we deem further citations of authority unnecessary. (5) The court erred in permitting counsel for the state to prove that there was a note found on the deceased, and in permitting them, in the presence of a jury, to identify the same and offer it as evidence, and in permitting counsel to state, in presence of jury, without rebuke, when the note was identified, that it was competent evidence unless objected to. *State v. Crow*, 107 Mo. 341; *State v. Trott*, 36 Mo. App. 29; *State v. Young*, 99 Mo. 682; *State v. Jackson*, 95 Mo. 623; *State v. Ulrich*, 110 Mo. 350; *State v. Woolard*, 111 Mo. 248; *Haynes v. Trenton*, 108 Mo. 123; *State v. Evans*, 124 Mo. 397. (6) The statements and dec-

larations of the defendant at his brother's house shortly after deceased was shot, while holding his wife's head and before she died, was legitimate evidence, and the court erred in excluding it. *State v. Young*, 119 Mo. 515; *Harriman v. Stowe*, 57 Mo. 93; *State v. Sloan*, 47 Mo. 604; *State v. Gabriel*, 88 Mo. 631; *Leahey v. Railroad*, 97 Mo. 165; *State v. Castor*, 93 Mo. 243; *State v. Matthews*, 98 Mo. 125; *State v. Crawford*, 115 Mo. 620; *Harper v. Morse*, 114 Mo. 325; *State v. Moore*, 22 S. E. Rep. 1086. (7) The court erred in permitting counsel for the state to read parts of the evidence of the defendant, taken at the coroner's inquest. *State v. Lewis*, 118 Mo. 79; *Peebles v. McHon*, 15 N. Y. 384; *Wood v. State*, 3 S. W. Rep. (Tex.) 336; *State v. Martin*, 28 Mo. 530; 1 Greenl. Ev., secs. 463, 464, 465; *Prewitt v. Martin*, 59 Mo. 325. (8) The court erred in refusing to permit Dr. Reynolds to give his opinion as to the position the hand that held the pistol was in at the time the deceased was shot, and in rejecting the evidence of Mr. Bachellor to the same effect. Any evidence that the defendant could not have so held the pistol, or that the deceased committed suicide, was clearly competent. *State v. Young*, 119 Mo. 511; *State v. Patrick*, 107 Mo. 175; *State v. Parker*, 96 Mo. 382; *Eyerman v. Sheehan*, 52 Mo. 222; *State v. Knop*, 45 N. H. 148; *State v. Mahan*, 68 Iowa, 304. (9) The court erred in refusing to permit defendant to cross-examine state's witnesses, Mrs. Windisch and Ollie Cooper, as to their ill-feeling toward defendant. *State v. Jones*, 106 Mo. 302; *State v. Leabo*, 84 Mo. 168; *People v. Brooks*, 30 N. E. Rep. 189; *Schultz v. Railroad*, 89 N. Y. 242; *Stark v. People*, 5 Den. 106; *Gale v. Railroad*, 76 N. Y. 594; *Tucker v. Welsh*, 17 Mass. 160; *Martin v. Barnes*, 7 Wis. 206; *Stewart v. Kindel*, 25 Pac. 990; *State v. Peel*, 14 Minn. 35; *State v. Collins*, 33 Kan. 77. (10) The court erred in excluding

as evidence the defaced picture of the defendant, and the evidence offered by the defendant in connection therewith, tending to show that the picture was defaced by state's witnesses, Mrs. Windisch and Ollie Cooper. This evidence tended to show the malice and ill-will borne the defendant by them and was competent for that purpose. See authorities next above. (11) The court erred in allowing counsel for the state, in his closing argument to the jury, to state, without being reprimanded by the court, while arguing the presumptions of law, that wife murder was not a new thing; "That other men had killed their wives and children." *State v. Woolard*, 111 Mo. 248; *State v. Ulrich*, 110 Mo. 350; *State v. Warford*, 106 Mo. 55; *State v. Young*, 105 Mo. 641; *State v. Moxley*, 102 Mo. 394.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) Judge Casteel was properly elected special judge; the statute provides only two prerequisites, viz.: *First*, the inability of the judge for any cause to hold the term; and, *second*, his failure to procure another judge. (2) The court did not err in its rulings on the evidence. (3) Nor in the giving and refusing of instructions. (4) The trial court did not err in permitting the questions asked of defendant by the state on cross-examination. *State v. Avery*, 113 Mo. 499. (5) The remark of the counsel for the state that "other men had killed their wives and children; it has been done many times before; it is no new thing" was entirely legitimate. (6) The supreme court will not reverse the judgment because the verdict is against the weight of the evidence. *State v. Fisher*, 124 Mo. 462; *State v. Young*, 119 Mo. 495; *State v. Banks*, 118 Mo. 117; *State v. Punshon*, 124 Mo. 448.

BURGESS, J.—This is the second appeal by the defendant in this case. On the first trial he was convicted of manslaughter of the first degree and on his appeal the judgment of the court below was reversed and the cause remanded for new trial. The case is reported in 124 Mo. 448, to which reference may be had for full statement of the material facts connected with the homicide. Such additional facts as may be necessary to a full understanding of the case will be stated in course of the opinion.

On the last trial defendant was convicted of murder in the first degree.

I. At the March term, 1895, of the criminal court of Buchanan county, Missouri (the term at which the last trial was had), the judge of said court, Honorable Silas Woodson, being unable to hold said term by reason of indisposition, Hon. B. J. Casteel was elected by the members of the bar of said court, special judge to hold said term, which he proceeded to do, after having taken the requisite oath, etc.

The point was made in the court below, and insisted upon in this court, that the trial court was not legally authorized, and that the special judge was without authority to try the case. This contention is predicated on the fact that it was not shown that the regular judge had ever tried to procure another judge to hold the term and had failed, and that it is only under such circumstances that a special judge can be elected by the members of the bar to hold any, term, or part of term, of court.

By section 3323, Revised Statutes, 1889, it is provided that "whenever the judge, from any cause, shall be unable to hold any term or part of term of court, and shall fail to procure another judge to hold said term or part of term * * * the attorneys of

the court who are present, but not less in number than five, may elect one of its members then in attendance having the qualifications of a circuit judge, to hold the court for the occasion." The record recites that "said Silas Woodson, judge of this court, has *failed* to procure another judge to hold said term; it is ordered by the clerk that an election be held," etc. The power of the members of the bar to elect a special judge to hold the term in no way depended on the efforts of the regular judge to procure another judge for that purpose, but his failure to do so; nonaction on his part in this regard, as shown by the record, authorized the election.

The election seems to have been in compliance with the statute and in every way regular.

II. Of the special venire of one hundred men summoned by the sheriff of the county in obedience to the order of the court, from which forty qualified jurors from whom twelve were to be selected to try the case, two of them, D. L. Gray and J. T. Imbrie were challenged by the state for cause, and excused over the objection and exception of defendant. The contention is, that they were competent to serve in the case, and error was committed in excusing them.

They were both sworn to answer questions touching their qualification to sit in judgment in the case. Gray in the course of his examination was interrogated, and answered as follows:

"*Q.* Is your mind in such condition at this time that you can hear the evidence in this case, and the instructions of the court as to the law, and return a fair and impartial verdict for both the state and the defendant, without reference to what you have read in the newspaper, or any opinion you have formed from it? *A.* No, sir; it is not.

"*Q.* You think you could not give the party and the state a fair trial, and lay aside everything you have heard before? You think you would be influenced by that? What do you say to that? *A.* Well, I think there would be something in the way; yes, sir, I do.

"*Q.* Have you now any opinion as to the guilt or innocence of this defendant? *A.* Well, sir, I am in sympathy with the defendant.

"*Q.* Can you go on the jury in this case, and render a fair and impartial verdict, according to the law and the evidence, without being influenced or prejudiced toward either party, by what you have read and the opinion you have formed? *A.* I couldn't do it, I don't believe."

This juror was clearly incompetent, and the court correctly so held. He not only stated that he had formed an opinion as to the guilt or innocence of the defendant from newspaper reports and hearsay, but he also stated that he was in sympathy with the defendant, and that he could not render a fair and impartial verdict, according to the law and the evidence, without being influenced or prejudiced by what he had read and the opinion he had formed.

While the formation of an opinion by a juror from newspaper reports and rumors, as to the guilt or innocence of the accused, which it would require evidence to remove, does not render him incompetent as a juror, provided the court be satisfied that such opinion will readily yield to the evidence in the case, and the juror is in condition of mind to pass on the issues under the evidence free from bias, yet when it further appears that the juror's opinion is fixed and will not yield to the evidence adduced, he is not an impartial juror and is manifestly incompetent.

Imbrie, on his examination, after having stated that he had no such conscientious scruples as would

prevent him from finding a verdict of guilty in a case where the punishment is death if under the law and evidence he believed the accused guilty beyond a reasonable doubt, further stated, in substance, that if the evidence of the guilt of the accused was altogether circumstantial he would have conscientious scruples and would not find a verdict of guilty. By the statute persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, are incompetent to sit as jurors in any such case, and it matters not whether the evidence of guilt be positive or circumstantial. This juror clearly came within the inhibition of the statute, and was properly excused by the court.

III. Another insistence is that the court erred in refusing to admit evidence tending to show that deceased was an expert with a pistol, and threats made by her to take her own life.

The court in passing upon these questions did but follow the rule announced by this court in its former opinion in this case. But we are now asked to reconsider and overrule that decision because it is claimed to be in conflict with "the overwhelming weight of authority." In the recent case of *State v. Fitzgerald*, 130 Mo. 407, we had occasion to review, at the expense of much time and labor, the authorities upon those questions, which leave no room for doubt in our minds as to the correctness of that decision. The weight of authority, is decidedly adverse to defendant's contention, and we therefore adhere to our former ruling.

IV. It is also insisted that the court erred in refusing to permit defendant to prove the disordered condition of deceased's mind at and prior to the time of her death, and in rejecting evidence offered by defendant for that purpose.

A number of authorities, including decisions of this court, are cited in support of this contention, but an examination of them will show that not one of them has the slightest tendency to do so. Many of them hold that the condition of the mind of the accused at the time of the commission of the offense might be shown; for instance, that he was insane or the condition of his mind was such that he was not responsible for his acts, but none of them go so far as to hold that the condition of the mind of the deceased was any justification or excuse for taking his life. Nor can we conceive of any case of homicide where such evidence would be admissible, unless it be where the killing is done in self-defense, and under such conditions the aggressor was a dangerous person. The evidence was clearly inadmissible in this case.

V. Dr. Reynolds, a witness for the state, having testified without objection that he found a letter in the bosom of the dress of deceased shortly after the homicide, was permitted to state, over the objection and exception of defendant, that a note which was then shown to him in the presence of the jury, was the same note. The ground of the objection is that the note was not competent evidence. It was not then offered in evidence, but was later on during the trial, when defendant objected, and his objection sustained. It is now contended that the conduct and statements of counsel for the state with respect of the note were calculated and intended to prejudice the minds of the jury against defendant.

While the remarks of counsel for the state to the effect that "the note was competent evidence if not objected to" were out of place, especially when he must have known that the same note had been ruled by this court to be inadmissible as evidence when the

case was here before, we do not feel that we would be justified in reversing the judgment on that ground. It is not every slight indiscretion committed by counsel during the trial of a cause, even when human life is at stake, that will justify a reversal of a judgment of conviction.

VI. Defendant offered evidence tending to show that after deceased had been shot, removed from the carriage, taken to the house of the brother of defendant, and while lying on the bed, that he was holding her head, and before she died he called her by name, and asked her to tell him how she was shot. It was not proposed to show what the dying woman said, but what the defendant said to her. Upon objection by counsel for the state the evidence was excluded, and this ruling is assigned for error.

These statements were not a part of the *res gestae*, and clearly not admissible on any other ground. They were no part of the transaction, shed no light upon the homicide, and were at most mere self-serving statements of the defendant and inadmissible for any purpose. *State v. Beard*, 126 Mo. 548; *State v. Nocton*, 121 Mo. 537; *State v. Smith*, 114 Mo. 406.

VII. It further appears that defendant testified before the coroner and the jury of inquest with respect to the homicide, and also as a witness in his own behalf on the trial of this case. On his cross-examination by counsel for the state, he was asked, over the objection and exception of his counsel, if he had not made certain statements before the coroner with respect to the homicide. The principal objections were that defendant had been induced to testify before the coroner under the promise of Norris, assistant prosecuting attorney for the county, that his statements then made could not be used for nor against him on his trial for

the homicide, and that his statement before the coroner should be shown to him, and he be given an opportunity to read it before being required to answer the questions.

He admitted having made some of the statements attributed to him, but did not say which. The state did not read or offer to read this statement nor any part of it, for the purpose of contradicting him, nor did defendant ask that it or any part of it might be read. Defendant had testified all about the homicide on his examination in chief, and questions propounded to him on his cross-examination with respect to statements made by him before the coroner or elsewhere in regard to matters to which he had testified in chief on the trial were proper. He was, however, entitled to have his entire statement before the coroner read to the jury had he desired it. *State v. Talbott*, 73 Mo. 347; *Prewitt v. Martin*, 59 Mo. 325; 1 Greenleaf, Ev., sec. 462; *Wilkerson ·v. Eilers*, 114 Mo. 245. This statement made by him was voluntary. He was informed before doing so that he might do so or not, just as he chose, and the fact that the assistant prosecuting attorney stated to him at the time that it would not be used against him did not render it involuntary, or deprive the state of the right to cross-examine him with respect thereto.

VIII. After Dr. Reynolds had testified that he could not state what position the arm was in that fired the fatal shot, at the time, he was again asked the same or similar questions, and on objection by the state was not permitted to answer.

There was no error in this ruling. It was in the discretion of the court whether the witness should answer the same question more than once.

Nor was there error committed in refusing to permit the witness Bachellor to testify as to his experi-

ments with a revolver, that defendant could not have fired the shot which caused Mrs. Punshon's death, and that the wound was self-inflicted. There is no claim that this witness was an expert in regard to such matters. This contention is, we think, untenable.

IX.    Upon the cross-examination of Ollie Cooper, a witness for the state, defendant proposed to prove by her for the purpose of showing her ill will and malice and that of Mrs. Windisch, another witness, against defendant, that Ollie Cooper took a number of pictures from Mrs. Windisch's, and that the face of defendant was defaced, the paper torn from across his eyes and face; and the picture of Miss Addie Gillispie in the same group, was also defaced, and another picture between the two undisturbed. That the pictures were not defaced when they were taken to Mrs. Windisch's; and that Mrs. Windisch and witness defaced them. The state objected to the introduction of this evidence and the court sustained the objection.

That the accused had the right to show on cross-examination of these witnesses, their feelings against him, and to that end might show expressions of ill will or malice by them toward him, as well also as any specific acts on their part indicative of such malice, seems to be well settled law. *People v. Brooks*, 30 N. E. Rep. 189; *Schultz v. Railroad*, 89 N. Y. 242; *Gale v. Railroad*, 76 N. Y. 594; *Tucker v. Welsh*, 17 Mass. 160; *Martin v. Barnes*, 7 Wis. 239; *Stewart v. Kindel*, 25 Pac. Rep. 990; *State v. Dee*, 14 Minn. 35; *State v. Collins*, 33 Kan. 77; *State v. McFarlain*, 6 South. Rep. 728; *Pettit v. State*, 34 N. E. Rep. 1118.

Such inquiries are usually with reference to threats of violence, or expressions tending to show ill will or malice, and must not be too remote. As we said in *Schultz v. Railroad*, *supra*, "the evidence to show the hostile feelings of a witness when it is alleged to exist

should be direct and positive, and not very remote and uncertain, for the reason that the trial of the main issues in the case can not be properly suspended to make out the case of hostile feeling by mere circumstantial evidence from which such hostility or malice may or may not be inferred." See, also, *People v. Brooks*, 30 N. E. Rep. 189.

Malice or ill will toward defendant from the defacement of the picture of defendant, was a mere matter of speculation, depending for its probative force upon the intention with which it was done, if intentionally, and such inquiry entirely too remote. There must of necessity be a limit to such inquiry, which rests somewhat in the discretion of the court.

For these considerations we are not of the opinion that the judgment should be reversed because of the ruling on that question. Moreover, the evidence of Miss Cooper and Mrs. Windisch shows throughout their prejudice against the defendant, which could not have been misunderstood by the jury, and the fact that his picture had been defaced by them, if proven, could not have made it more emphatic.

X. It is unnecessary to say more with respect to the action of the court in permitting witness Norris to testify as to what was said by him to defendant at the coroner's inquest about defendant's making a statement, and that the same was made voluntarily, than that there was no prejudicial error committed by this ruling.

XI. The action of the court in refusing the fifth instruction as asked by defendant, then modifying it and giving it as modified, is also criticised. It is as follows:

"The court instructs the jury that the law presumes the defendant innocent of the offense charged and innocent of any offense; and in this case this pre-

sumption of innocence acquires additional force because
the defendant is accused of killing his wife and
that in consequence of the marital relation existing
between them, the law adds to the general pre-
sumption of innocence the further presumption that
he would not kill his wife [provided the jury believe
that they were friendly and that their relations were
such as usually exist between husband and wife], and
these presumptions go with him throughout the trial
and remain and abide with him until they are met
and overcome by competent evidence that proves the
defendant guilty beyond all reasonable doubt, there-
fore unless the jury believe from the evidence that the
state has met and overcome both these presumptions
by evidence which proves that the defendant did shoot
and kill his wife, beyond all reasonable doubt; that is,
that the state has proved in this case that the defend-
ant did shoot and kill his wife, by evidence of such
convincing character as to force the minds of the
jurors to no other reasonable conclusion than that he
did shoot and kill her, then these presumptions of
innocence demand at the hands of the jury the
defendant's acquittal and in that case the jury are
bound to find him not guilty." The words in brackets
were added by the court.

Without expressing an opinion as to whether this
instruction ought to be given in any case (because
unnecessary to do so) it was certainly very favorable
to defendant, and the words added by the court only
made it more so, if defendant and deceased lived
happily and peacefully together as contended by him.
We do not think that the modification destroyed its
force, but, under the evidence, added thereto. Cer-
tain it is he had no cause to complain of it as given.

XII. A final contention is that the court erred in
allowing counsel for the state, in his closing argument

to the jury to state, without being reprimanded, "Other men have killed their wives and children, it has been done many times before. It is no new thing." It is not unfrequently a difficult matter to draw the dividing line between what is and what is not legitimate and proper argument to a jury in cases of this character, but nothing should be allowed, calculated to prejudice the accused in the minds of the jury, not warranted by the evidence, facts in proof, or common knowledge. *State v. Emory*, 79 Mo. 463; *State v. Hopkirk*, 84 Mo. 278; *State v. Musick*, 101 Mo. 260. To say that men have killed their wives and children, is but stating that which everyone knows, and was not, we think, improper. There was nothing in the remark to furnish any valid ground of complaint.

We are unable to see any reversible error in the record and the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.