## THE STATE v. WILLIAM LAWSON, Appellant.

### Division Two, February 6, 1912.

1. **INDICTMENT: Indorsement of Names of Witnesses: New Witnesses at Trial: Notice to Defendant.** The names of eight witnesses were indorsed on the indictment. During the examination of the talesmen on their *voir dire* the State's attorney, in open court and in the presence of defendant and his counsel, read the names of those eight witnesses and announced that there were six others, naming them, who were witnesses. A recess was taken until 2 p. m., when the jury was sworn and one of those whose names were on the indictment testified merely about the locality of the crime charged and then as an expert. No other witness whose name was indorsed on the indictment was called, but five of the six others named during the *voir dire* were called, and, over defendant's objections and exceptions, testified in the case. The name of no witness who testified to the facts constituting the offense charged was on the indictment. *Held,* that the court did not err in admitting the testimony of the new witnesses. The defendant, if he desired to raise the question at all, should have demanded a reasonable time to meet the testimony of the witnesses mentioned when apprised, before the jury was sworn, of the State's intention to call them. The new witnesses testified to the identical offense charged in the indictment.

2. ————: ————: ————: **Unfair Advantage not Allowed.** The State will be allowed to take no unfair advantage of a defendant by intentional concealment of its witnesses.

3. ————: **No Names of Witnesses Indorsed.** When defendant is advised in advance (for instance, by an entire failure to indorse the names of any witnesses) that the State is not fighting in the open, and yet elects to enter the contest under such conditions, he cannot, for the first time, after being defeated, complain.

4. INSTRUCTIONS: Every Element of Offense: Reasonable Doubt. An instruction which sets out the facts necessary to constitute the offense charged and tells the jury that if they find these facts they shall find the defendant guilty, is not erroneous because it omits the element of reasonable doubt. Reasonable doubt is fully covered in another instruction. It is not necessary to append to every instruction a clause announcing the rule that the jury must be convinced beyond a reasonable doubt before they can convict.

5. ————: Evidence: Joint Offense. Defendant was convicted of having set up and kept a crap table and having induced, enticed and permitted divers persons to bet and play thereon. The game was played in a building occupied by a club of which defendant was a member. There was evidence that defendant was nearly always in attendance, that he "cut" a nickel on every bet and delivered this "rake-off" to the president or the general manager of the club's affairs, who appeared at intervals to receive it. *Held*, that, under such circumstances, instructions cannot be attacked which submitted the case on the theory that defendant acted in concert with others in committing the offense charged.

6. GAMING DEVICE: Setting up and Keeping: Charged and Tried as Continuing Offense: Players Named in Indictment: Proof: Instructions. The offense of inducing, etc., persons to bet and play on a gambling device set up and kept by defendant is charged in the indictment as a continuing offense; it is such by nature, and it was tried as such. Therefore, it cannot be said that, because the names of some of those who played were set out in the indictment, the court in its instructions should have told the jury that unless they found defendant guilty as of the particular time when the named persons played, they should acquit him, nor can it be said that the court should not have instructed the jury (as it did) to return a verdict of guilty if they found defendant had set up and kept the crap table at any time within three years prior to the return of the indictment. No motion to elect was made and no instruction was asked restricting the jury to a particular time.

7. CONTINUING OFFENSE: How Charged and Proved When No Abatement. An offense continuous by nature may be charged as of one day and proved as a continuing offense provided no abatement is directly sought.

8. ————: Indictment: Continuando. That fragments of a formal *continuando* appear in the indictment is of no consequence, and they may be treated as surplusage if the offense is continuing in its nature and therefore provable under a simple charge as of a particular day.

9. **KEEPING GAMING DEVICE:** Instructions: Mere Presence as Player. The trial court's failure to give a specific instruction that defendant could not be convicted if he did no more than participate in the game as a player, was not reversible error under the circumstances of this case. The jury was told by other instructions that the mere presence of a person at the scene of an offense did not justify his conviction as a principal, and that it was sufficient "if the evidence satisfied the jury beyond a reasonable doubt that the defendant, or other persons acting jointly with him, had charge of and control of" the device.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

Affirmed.

*John A. Gernez* and *Thomas J. Rowe, Jr.*, for appellant.

(1) The court erred in permitting the testimony of witnesses whose names were not indorsed on the indictment, to stand, and should have sustained defendant's plea in abatement. The unfair advantage taken of defendant by the circuit attorney under the circumstances was self-apparent and should have been condemned by the court and a verdict obtained by such means should not be permitted to stand. R. S. 1909, sec. 5097; State v. Roy, 83 Mo. 268; State v. Barrington, 198 Mo. 66; State v. Nettles, 153 Mo. 469; State v. Steifel, 106 Mo. 133; State v. Meyers, 198 Mo. 246; State v. Henderson, 186 Mo. 482. As to propriety of remedy, see 1 Bishop, New Crim. Proc., sec. 113. (2) (a) There was no warrant for instructing the jury on the theory that defendant had committed the alleged offense jointly with others, as in instructions 1, 2 and 3. (b) Instruction 3, with reference to defendant acting as an accessory, is unwarranted by the evidence. These three instructions are misleading and deceptive, inviting the jury to the consideration of a

situation that did not exist.   (3)  Instruction 1 was erroneous in that it left out the element of "reasonable doubt" in the jury's consideration of the evidence and in their finding of a verdict.   It cannot be cured by a subsequent instruction; and, even if it could, it has not been done.   State v. Helton, 234 Mo. 559.

Elliott W. Major, Attorney-General, and John M. Dawson, Assistant Attorney-General, for the State.

(1)  Section 5097, R. S. 1909, provides that the names of all material witnesses must be indorsed upon the indicment.   This section also provides that "other witnesses may be subpoenaed or sworn by the State."   This section has been under consideration many times by this court.   In the Griffin case, 87 Mo. 612, it was held, the objection that the names of material witnesses for the State were not indorsed upon the indictment should be made upon the motion to quash, citing State v. Roy, 83 Mo. 268.   Appellant filed two motions to quash this indictment, and we do not find this ground alleged in either motion.   This motion was under discussion and consideration in the recent case of State v. Barrington, 198 Mo. 66, in which an exhaustive review of the former cases was had, and the construction of the statute settled, as follows:  First.  If no witnesses were indorsed upon the indictment, then the indictment should be quashed upon motion, unless the prosecuting attorney offers to supply such omission, in which case the defendant should have a reasonable time after the omission had been supplied to prepare his defense.  Second.  If the State should indorse some of the witnesses on the back of the indictment, and then purposely refrain from indorsing the names of material witnesses on the back of the indictment with the view of taking an

undue advantage of the defendant, then the court would be warranted in quashing the indictment, or requiring the prosecuting attorney to supply such omission and give the defendant a reasonable time in which to meet the testimony of such material witnesses, but, by no means, does this statute contemplate that the State shall be denied the right to introduce on the trial, witnesses whose names are not indorsed on the indictment. Furthermore, the presumption must be indulged that the indictment was predicated upon the testimony of witnesses whose names are indorsed upon it, and should the State, after the indictment is returned, discover additional witnesses who are material, the statute contemplates that such witnesses may be subpoenaed and sworn. This adjudication is a complete answer to appellant's first assignment of error. (2) Appellant asserts that the court erred in giving instructions 1, 2 and 3, in that there was no evidence authorizing these instructions. The evidence tended to prove there was a conspiracy between Jackson, Washington and appellant in running this gambling device, and therefore the instructions were competent. It would have been error if the court had not instructed the jury as in these instructions. State v. Bobbitt, 215 Mo. 10. Instructions as to the guilt of all who acted together with a common intent is proper. State v. Tobie, 141 Mo. 556; State v. Sykes, 62 Mo. 80; R. S. 1909, sec. 4898. Instruction 1 cannot be legally criticised, as it follows the statute and contains all the elements necessary to constitute the crime, as defined in the statute and contained in the indictment. Where all the propositions of law arising on the facts developed in evidence are covered by the instructions of the court they are sufficient. State v. Crittenden, 191 Mo. 17; State v. Tobie, 141 Mo. 547; State v. Rufus, 149 Mo. 406. Instruction 2 is usually given because it is not necessary

that the appellant, and those acting with him, own the table mentioned in the indictment and in the evidence, but it is sufficient if he, or other persons acting jointly with him, had charge and control of the same. R. S. 1909, sec. 4750. Instruction 3 is proper and founded upon the evidence. R. S. 1909, sec. 4898; State v. Schuchmann, 133 Mo. 111; State v. Sykes, 62 Mo. 80; State v. Duffy, 124 Mo. 1.

BLAIR, C.—Defendant was convicted in the circuit court of the City of St. Louis of having set up and kept a crap table and having induced, enticed and permitted divers persons to bet and play thereon.

The evidence tended to show that a crap game was conducted at 2309 Chestnut street, St. Louis, for many months prior to the time the indictment was returned. The game was played on a covered pool table in the basement of a building occupied by the Modern Horseshoe Club, of which club defendant was a member. Defendant himself testified that a crap game was there conducted in the manner described, but denied having anything further to do with it than occasionally to participate as a player. There was evidence, however, that he was practically constantly in attendance, and that he "cut off" a nickel out of every bet made, and that this "rake-off" he delivered to the president or the general "manager" of the club's affairs, who appeared at intervals to receive it. Defendant also settled disputes as to the rules of the game, kept order, and adjusted differences of various kinds which arose among the players. An expert was called and detailed the intricacies and mysteries of "crap-shooting."

I. The names of eight witnesses were indorsed on the indictment. During the examination of the talesmen on their *voir dire*, the assistant circuit at-

torney, in open court and in the presence of defendant and his counsel, read the names of the eight witnesses mentioned and announced that in addition to these there were six others, Clifford Clark, William Ransom, James Thornton, Jesse Crow, Henry Harris and one Sydnor, who were witnesses in the case and inquired if the members of the panel had an acquaintance with any of the fourteen. A recess was then taken until two p. m., at which hour the jury was sworn and officer Wells, whose name appeared in the list of witnesses on the indictment, was called and sworn. This witness testified as to the name and location of the clubrooms in which the offense charged was committed, and gave a general description of the exterior of the building at 2309 Chestnut street. He also testified as an expert, describing in detail the manner in which the game of ''craps'' is played.

No other witness whose name was indorsed on the indictment was called, but five of the six others named during the *voir dire* examination of the jury were called, and, over defendant's objections and exceptions, testified in the case.

On this state of the record it is contended that the court erred in admitting the testimony of these witnesses.

The statute (Sec. 5097, R. S. 1909) requires that ''When an indictment is found by the grand jury, the names of all the material witnesses must be indorsed upon the indictment'' and provides that while ''other witnesses may be subpoenaed or sworn by the State. . . . no continuance shall be granted to the State on account of the absence of any witness whose name is not thus indorsed on the indictment, unless upon the affidavit of the prosecuting attorney showing good cause for such continuance.''

While this statute has been frequently construed by this court, in no previous case has the situation presented been like that in this. Here the name of no

witness who testified to the facts constituting the offense charged was on the indictment.

Though the statute expressly provides that witnesses other than those whose names are indorsed may be subpoenaed and sworn and does not expressly provide, for lack of compliance with its provisions, any other penalty than the limitation upon the State's right to a continuance, this court, since 1884 (State v. Roy, 83 Mo. l. c. 269, 270), has consistently held that the statute was passed for the purpose of giving to "the person criminally charged the opportunity of knowing who were his accusers, and by whom the State expected to establish the charge preferred, in order that he might prepare, not only to meet the charge, but'those upon whom the State relied to prove it."

Thus interpreting the statute in harmony with its evident spirit, this court has frequently announced and applied the rule that no unfair advantage of a defendant will be permitted to be taken by intentional concealment of the names of the State's witnesses. An ambuscade of this kind will not be tolerated. [State v. Nettles, 153 Mo. l. c. 470; State v. Shreve, 137 Mo. l. c. 5; State v. Myers, 198 Mo. 247.]

On the other hand, if the defendant is advised in advance (for instance, by an entire failure to indorse the names of any witnesses) that the State is not fighting in the open, and elects to enter the contest under such conditions, he cannot, for the first time, after being defeated, complain. [State v. Griffin, 87 Mo. l. c. 612; State v. O'Day, 89 Mo. l. c. 560.]

In this case defendant and his counsel were advised in open court, prior to the swearing of the jury, that the witnesses who were used would be used on the trial and no suggestion was made of surprise, nor was any motion to quash, request for delay, or demand for continuance made. On the contrary, not until the jury had been sworn and defendant thus put in jeopardy, and the witnesses called, did defendant suggest that he

intended to rely upon the absence of their names from the indictment for their exclusion. This is not a case in which the calling of the witness first advises defendant of the State's intent to use him and consequently affords the first opportunity to challenge his competency. In this case, defendant, if he desired to raise the question at all, should have availed himself of the rule laid down in State v. Barrington, 198 Mo. l. c. 70, and should have demanded a reasonable time to meet the testimony of the witnesses mentioned when apprised, before the jury was sworn, of the State's intention to call them.

Having been notified by the announcement of the assistant circuit attorney before the jury were sworn, that certain witnesses whose names were not on the indictment were to be called for the State, defendant had all the notice he would have had if the names had at that moment been added to those on the indictment, so far as concerns the question now before us. The trial court doubtless would have required the indorsement of these additional names had defendant moved for that purpose. After the announcement mentioned, we think that, lacking some motion upon defendant's behalf, the court was justified in treating the question raised after the jury was sworn exactly as if all the names had been indorsed upon the indictment and that this record shows no error because of the fact that it did so treat it.

That the State would not be permitted to purposely deceive defendant to his prejudice by taking part of its witnesses before the grand jury and indorsing their names upon the indictment and then in the trial, and without warning, substitute an entirely new list of witnesses, goes without saying. When notified that the witnesses were to be used, defendant had the right to apply for, and in this case it would have been the duty of the court to have given him, on a proper showing, sufficient time to prepare to meet their testimony. He

saw fit, doubtless for some good reason, to waive his right in this respect and permit the jury to be sworn, whereby the whole aspect of the proceeding was changed. Under these circumstances this case ought not be reversed on this assignment.

It is to be presumed that the indictment was founded upon the testimony of the witnesses whose names were indorsed upon the indictment, but it will not be presumed, in the light of their testimony, that the witnesses called were testifying to an offense different from that for which the indictment was found, and this is particularly true in view of the conclusion reached in a subsequent paragraph as to the nature of the offense of which defendant has been convicted. The testimony of the witnesses called shows that the offense charged was identical with that to which these witnesses testified even as to the names of the players so far as they were designated by name in the indictment. Under the circumstances there was no error in the course taken by the trial court.

II.   The first instruction given by the court is said to be erroneous because it "omits the element of reasonable doubt," and the case of State v. Helton, 234 Mo. 559, is cited in support of this contention. The instruction mentioned sets out the facts necessary to constitute the offense charged and tells the jury that if they find these facts they should find the defendant guilty. In another instruction the jury are fully instructed as to reasonable doubt. It has long been held that it is not necessary to append to every instruction given a clause announcing the rule as to the necessity of the jury being convinced beyond a reasonable doubt before they can convict. The decision in State v. Helton, supra, affected that holding not at all. In that case the facts predicated in the instruction condemned were all consistent with the defendant's innocence and it was for that, and the additional reason

that the instruction told the jury to convict if they found those facts only, that the case mentioned was decided as it was. The Helton case is no authority for the contention that an instruction requiring the jury to find all the facts necessary to constitute a given offense, which in themselves negative every defense made, is erroneous simply because it fails to contain a clause as to reasonable doubt—a separate instruction covering that matter fully.

III. Another ground on which the instructions are assailed is that the court submitted the case on the theory that defendant was guilty whether he acted alone or in concert with others. It is insisted in the briefs that the evidence tended to show no more than that "the defendant was himself the principal and there was no other person committing the alleged crime whom he aided, abetted, assisted or encouraged." It is not contended that the statute (Sec. 4898, R. S. 1909) is not broad enough to authorize defendant's conviction in this case, whether he was found to be a principal, principal in the second degree, or accessory before the fact, but merely that there is no evidence tending to show that he was, if guilty at all, other than the principal actor and sole offender. A reference to the statement of the facts of the case will disclose our reasons for overruling this contention.

IV. The indictment alleged, among other things, that defendant induced, enticed and permitted certain named persons, and others whose names were to the grand jury unknown, to bet and play "on and by means of the gambling device," which he is charged with having set up and kept, corresponding in this respect with the information in the case of State v. McKee, 212 Mo. l. c. 142. The evidence tended to show that the game set up and kept at 2309 Chestnut street was run continuously for months prior to the finding of

the indictment, and that not only the persons named in the indictment, but a great many others, played and bet thereat, and that defendant was constantly present.

It is practically conceded that it was not necessary to set out in the indictment the names of the persons who played, but it is insisted that since the names of some of them are set out a particular offense was thereby individuated, and the State having thus particularized the offense in the indictment, the court in its instructions should have advised the jury that unless they found defendant guilty as of the particular time when the persons named in the indictment played, they should acquit him and that it should not, in the circumstances mentioned, have instructed the jury (as it did) to return a verdict of guilty in case they found defendant had set up and kept the crap table at any time within three years prior to the return of the indictment.

It is not contended that evidence as to defendant's conducting the game at other times than those when the persons named in the indictment played was inadmissible, and such evidence was received without objection. No motion to elect was made at any time and no instruction restricting the jury to a particular time was asked by defendant.

It will be observed that the contention now made, which appears in this case for the first time in the reply brief, depends upon the assumption that the offense charged and proved was not a continuing offense but that each time or day on which the table was kept and played upon was a separate and distinct crime. If the offense was a continuing one and charged as such it was not only unnecessary to name the persons who played but, if some were named, and that allegation and the one that other unknown persons played was fully proved, as in this case, it makes no difference that these persons, known and unknown, were not shown to have

all played at the same time.   [Comm. v. Price, 8 Leigh, 757.]   The names of the persons gambling were but an incidental matter.   [Jessup v. State, 14 Ind. App. l. c. 232.]

The attempt to employ a formal *continuando* in this case was not a skillful one (Bishop's Directions and Forms, sections 82, 83), but an offense continuous by nature may be charged as of one day and proved as a continuing offense provided no abatement is directly sought (*Id.*, section 81), and such is the better pleading in such case.

That fragments of a formal *continuando* appear in the indictment is of no consequence, and they may be treated as surplusage if the offense is continuing in its nature and therefore provable under a simple charge (also made) as of a particular day.   [Bishop's Directions and Forms, sec. 82; State v. Lee, 228 Mo. l. c. 493, 494; State v. Groves, 21 R. I. 253.]

By this rule the indictment in this case was therefore sufficient as a charge of a continuing offense and evidence was admitted on that theory and the whole case, from beginning to end, tried in that fashion. Defendant's failure to move an election at any time and his failure to ask an instruction restricting the jury to a particular occasion or admonishing them that all must agree upon one particular occasion on which he offended, sufficiently indicate his position during the trial.

In the case of State v. Lee, supra, this court held that the indictment charged a continuous offense and practically committed itself to the doctrine that the offense of setting up and keeping a gaming device, etc., may be prosecuted as a continuing one.   In that case the principal instruction was like that in this case and authorized the jury to convict if defendant had set up and kept, etc., a certain gaming device within three years prior to the finding of the indictment, there being evidence that Lee operated the device for months.

We see no reason for departing from that conclusion. The word "keep" itself contains the idea of continuity. [United States v. Smith, 4 Cranch (C. C.) 659, 27 Fed. Cas. 1155.] We hold that the offense of setting up and keeping (the instructions having required the jury to find both) as proved in this case, is a continuing one in its nature, and think this conclusion well supported by reason. It certainly is supported by authority. [State v. Wilson, 9 Wash. l. c. 19; Martin v. State, 56 So. l. c. 65, 66; Bryan v. State, 120 Ga. 201; Kain v. State, 16 Tex. App. l. c. 309; State v. Lindley, 14 Ind. 430.] Setting up and keeping a gaming table or device was a nuisance at common law by force of the fact that it was continuous.

The offense having, in effect, been charged in the indictment, being in its nature and having been tried as a continuing one, there could be but one punishment (Hinkle v. Commonwealth, 4 Dana, 518), and any other prosecution of defendant for an offense committed by the same means at the same place prior to the filing of the indictment in this case is barred by this conviction.

It is not meant by what has been said that a gaming device must be kept for a year, a month, a week or a day before the keeper becomes amenable to the penalties of the statute; nor that it is not possible for two separate offenses to be committed within a given time by the same means at the same place by the same person. [State v. Lindley, supra.]

In this case, however, defendant has been charged, tried and found guilty of a continuing offense and cannot complain that the trial court did not apply rules applicable solely to cases in which there is evidence of separate and distinct offenses. The naming of certain persons in the indictment did not serve in this case to necessitate the restriction of the State's evidence to occasions on which such persons played, and

the objection made on the ground that the instructions did not so restrict the jury's finding is overruled.

V.   While the trial court might well have given a specific instruction to the effect that defendant could not be convicted in case he did no more than to participate in the game as a player, we do not think its failure to do so, in the circumstances of this case, constitutes reversible error.   In the instructions given the jury was told, among other things, that "the mere presence of a person at the time of the commission of an offense will not justify his conviction as a principal unless the evidence shows that he was present aiding, abetting, encouraging or assisting the person who did actually commit the offense," etc., and, in the preceding paragraph, that it was sufficient "if the evidence satisfied the jury beyond a reasonable doubt that the defendant, William Lawson, or other persons acting jointly with him, had *charge of and control of*" the device.

Taking the instructions as a whole, we are of the opinion that while they are not entirely above criticism in some respects, yet the jury could not have been misled in the respect mentioned.   The judgment is affirmed.   *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by BLAIR, C., is adopted as the opinion of the court.   All the judges concur.