## THE STATE v. JESSE WEAGLEY.

Division Two, March 7, 1921.

1. **INSTRUCTION: Murder in First Degree: Instruction for Second Degree.**   The giving of an instruction authorizing a conviction of murder in the second degree when the evidence conclusively shows that the crime was murder in the first degree, is not error —the reason being, first, the express authority of the statute, and, second, an instruction for the lower degree of the offense being more favorable than otherwise to defendant he is not harmed thereby.

2. **EVIDENCE: Held Under Information: Facts Before Grand Jury.** In the trial upon an indictment, the statute (Sec. 3870, R. S. 1919) does not make admissible in evidence subpoenas and record entries tending to show that, while defendant was being held under an information charged with the same crime for which he is being tried, his relatives and other witnesses had been brought before the grand jury and required to testify concerning the crime, and that the transcript of such testimony had been used by the prosecuting attorney at the trial. The statute does not prohibit the grand jury from secretly interrogating witnesses for a defendant against whom an information is pending; and the indictment being returned, all matters pertaining to the information thereby suspended are foreign to the case.

3. **INSTRUCTION: Insanity: Excuse Instead of Defense.** The use of the word "excuse" instead of the word "defense," in the initial clause of an instruction in which the jury are told that "insanity is interposed by the counsel for defendant as an excuse for the charge set forth in the indictment," is not harmful, for both words mean justification.

4. **———: All Law Pertaining To Subject.** It is elementary that all law applicable to the case under the evidence need not be given in one instruction. An instruction on insanity is not erroneous because it does not inform the jury of the weight to be given the expert testimony, if that is done in a separate instruction.

5. **———: Insanity: Test: Exercise of Will.** Where a plea of insanity is interposed, the test of mental capacity is not whether the accused was capable of exercising his will, but whether, by reason of his insanity, he was incapable of distinguishing between right and wrong at the time of the commission of the offense. The instruction should not authorize an acquittal if the evidence discloses that defendant was "incapable of exercising his will," for those words inject technical distinctions which interfere with the wholesome administration of the criminal law.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss,* Judge.

AFFIRMED.

*Martin E. Lawson, Andrew Craven* and *Jacobs & Henderson* for appellant.

(1) Under the testimony in this case, the defendant was guilty either of murder in the first degree or

nothing. If defendant was sane at the time of the commission of the offense, he was guilty of murder in the first degree because every element of that crime was present. The court, without any testimony warranting it, gave an instruction on murder in the second degree and the defendant was convicted of murder in the second degree. This was error on the part of the court because there was no testimony warranting such an instruction, and its only result was to mislead the jury. The instructions should have been confined to the crime of murder in the first degree. State v. Pushon, 124 Mo. 457; State v. Alexander, 66 Mo. 148; State v. Mahly, 68 Mo. 315; State v. Bobbst, 269 Mo. 224. (2) The defendant offered to show the subpœnas and the grand jury records and the information showing that the defendant had been informed upon by the prosecuting attorney, charging the defendant with murder in the first degree, and that the preliminary hearing had been had. The defendant's relatives, his father, mother, sisters and brothers, were forcibly brought before the grand jury and there required to testify under oath, and their testimony reduced to writing, which at the time of trial, was used by counsel to cross-examine the witnesses. Such acts on the part of the prosecutor and counsel for State, were highly improper, prejudicial and in violation of the rights of the defendant and contrary to law, and more particularly of Sec. 5078, R. S. 1909, wherein it is said that after the finding and returning of an indictment by a grand jury, no prosecuting attorney or foreman or jury, or in fact, any person, shall have the right to cause any subpœna or any process to re-issue for any person who is known or believed by such foreman, prosecuting attorney or jury, to be a witness in behalf of the person or persons so indicted. (3) Instruction 8 given by the court is both erroneous and prejudicial to the rights of the defendant. (a) The court opened this instruction as follows: Insanity is interposed by "counsel of defendant as an excuse for the charge." The phraseology amounts in itself to an

adverse comment upon defendant's defense, and the jury could not help but feel that the court by his words sought to discredit his defense. Instead of saying, as is invariably done in approved instructions, that defendant, by his counsel, interposed as a defense the defense of insanity, he says that insanity is interposed by counsel of defendant as an excuse. The court could not possibly have discovered a more prejudicial way to the defendant, of wording his instruction. (b) The instruction, in the light of the defense in this case, should have included in its description of the definition of insanity, the additional words that the defendant, due to mental derangement, was "incapable of exercising his will." State v. Kotovsky, 74 Mo. 248. In the case at bar, the defense includes an epileptic automatism during which the defendant moved about doing apparently logical things involuntarily. (4) Instruction 11, given by the court, is erroneous because it attempts to enumerate those things which the jury shall consider in arriving at a determination of the defendant's sanity or insanity, but it fails to set out certain elements relating to matters tending to throw light upon the defendant's mental condition and which were taken into consideration by medical testimony in passing upon his mental condition, but which are ignored in the instruction. For instance, while the instruction limits the jury in passing upon the mental condition of the defendant to a consideration of his life, habits, conduct and mental capacity, it ignores and takes out of this case and away from the jury the fact that the defendant had received a violent head injury from which he was unconscious for two hours, and which was commented upon and taken into consideration by medical testimony in arriving at his mental condition, and which experts said might cut a tremendous figure, especially when taken into consideration with defendant's predisposition to a nervous disorder. It also ignores and by that fact takes away from the jury, since they are specifically told things they shall consider in arriving at the mental condition

of the defendant, the fact that in the summer, preceding the homicide, the defendant was overcome by heat from which he was delirious and for which he required the services of a physician. This fact was taken into consideration by the experts and because of its effect upon defendant's nervous organism was considered in arriving at his mental condition, the experts saying that it might have a serious effect upon his mind, particularly in view of his predisposition to nervous trouble. Both these matters were testified to by lay witnesses and were a part of the hypothetical question propounded by defense to its experts.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) There was evidence tending to show that appellant killed deceased while angry. This evidence warranted the trial court in giving to the jury an instruction on murder in the second degree. 21 Cyc. 1067; State v. Wieners, 66 Mo. 24; State v. Marsh, 171 Mo. 528; State v. Robertson, 178 Mo. 505. (a) A verdict will not be disturbed because the evidence shows the appellant to be guilty of a higher degree of the offense than that of which he was convicted. Secs. 4903, 5115, R. S. 1909; State v. Berkley, 109 Mo. 675; State v. Frazier, 137 Mo. 340; State v. McMullin, 170 Mo. 630; State v. West, 202 Mo. 138; State v. Bobbitt, 215 Mo. 38; State v. Whitsett, 232 Mo. 522; State v. Barnes, 204 S. W. 266. (b) Having been convicted of murder in the second degree, appellant cannot complain that he was not convicted of murder in the first degree. Sec. 5115, R. S. 1909; State v. Bell, 136 Mo. 124; State v. Billings, 140 Mo. 205; State v. Todd, 194 Mo. 394; State v. West, 202 Mo. 139; State v. Sebastian, 215 Mo. 79. (2) Instruction No. 8, on insanity, is correct in form and substance. State v. Pagels, 92 Mo. 314; State v. Schæfer, 116 Mo. 109; State v. Duestrow, 137 Mo. 69, 88; State v. Holloway, 156 Mo. 228; State v. Pauls-

grove, 203 Mo. 200; State v. Porter, 213 Mo. 55. (a) Said instruction is not erroneous because it contains the following language: "Insanity is interposed by the counsel of the defendant, as an excuse for the charge set forth in the indictment." Kelly's Crim. Law, sec. 40; State v. Pagels, 92 Mo. 309; State v. Lewis, 136 Mo. 91; State v. Holloway, 156 Mo. 230; State v. Paulsgrove, 203 Mo. 205; State v. Speyer, 207 Mo. 555. (b) Said instruction is not erroneous because it does not mention the expert testimony. Instruction No. 12 covered the question of expert testimony. Instructions must be read as a whole. State v. Crane, 202 Mo. 84; State v. Shout, 263 Mo. 375; State v. Finkelstein, 213 S. W. 468. (c) Said instruction is not erroneous because it does not include the question as to whether appellant was "incapable of exercising his will." State v. Rose, 271 Mo. 27; State v. Pagels, 92 Mo. 317; State v. Erb, 74 Mo. 203; State v. Turlington, 102 Mo. 654; State v. Miller, 111 Mo. 551; State v. Paulsgrove, 203 Mo. 205. (3) Instruction No. 11, on insanity, is sufficient in form and substance. State v. Paulsgrove, 203 Mo. 202; State v. Duestrow, 137 Mo. 88. (4) The trial court did not err in excluding from the evidence the Court records and the information first filed in this cause. Sec. 5078, R. S. 1909; State v. Faulkner, 175 Mo. 604.

WALKER, J.—The appellant was charged by indictment in the Circuit Court of Clay County with murder in the first degree. Upon a trial he was convicted of murder in the second degree, and his punishment assessed at twenty years' imprisonment in the penitentiary. From this judgment he appeals.

Appellant, a young man about 24 years of age, resided with his parents on a farm in Clay County. In the same neighborhood lived a Miss Clements. She and the appellant had been sweethearts for a number of years, and until the day of the tragedy they had been engaged to be married. On that day he received a let-

ter from her terminating the engagement on the ground of parental opposition. His attitude and actions upon the receipt of her letter are thus graphically detailed by his counsel: "As he sat at the table after reading the letter his face was excessively pale; apparently he could not eat; his eyes had about them an unseeing look and he sat staring at the table." He arose and went upstairs where, it was afterwards discovered, he procured a loaded pistol belonging to a farm hand; going to the barn he saddled and mounted a horse and rode away. Soon thereafter he rode into the yard at the Clements' home and hallooed. Miss Clements and her mother were sitting by a window and, hearing his call, the former went to the door and asked if he desired to see her. In his usual manner he answered, "Yep." He had formerly thus conducted himself and there was otherwise nothing unusual in his manner or actions. Miss Clements went upstairs, got a ring box evidently containing the ring he had given her, put on her cloak and went out to meet him. He had dismounted and was waiting for her further back in the yard. She approached him and handed him the ring box. He caught her by the wrist, put the ring box in his pocket, and drew the revolver, which she grasped and screamed for help. Mrs. Clements and another daughter, Mrs. Piles, ran to her assistance. Just before they reached the scene, appellant wrenched the pistol from Miss Clements' grasp and shot her three times, inflicting mortal wounds. Mrs. Clements threw her arms around her daughter and attempted to lead her away. The latter sank to the ground, and her mother took her across her lap in an effort to relieve her agony. Appellant stood near at hand, and, pointing the pistol at Mrs. Clements, he fired at but did not hit her, saying as he did this, with a vile epithet, "I'll get you too." He then went down the road and the women heard several shots in the direction he had gone. A short time after the shooting he was found lying in the road unconscious with three pistol wounds in his chest.

Miss Clements died from the effects of her wounds about fifteen minutes after she was shot by the appellant. Appellant was taken to a hospital in Kansas City, where in a short time he recovered from his wounds, was brought back to Clay County, indicted, tried and convicted as stated.

The defense interposed to this murder was insanity. Voluminous testimony, not unusual in cases of this character, pro and con, and expert and lay, was adduced. On the part of the appellant it ranged all the way from an alleged inherited tendency to insanity due to the alcoholism of the father, and the goitre and defective heart-action of the mother at about the time of the appellant's conception, on down through his childhood and adolescence, during which time witnesses testified that he received physical and other injuries which aggravated intermittent fits or convulsions, to which he had been subject from his infancy. These paroxysms were defined to be epileptic in their nature and the medical pundits who testified as experts, basing their conclusions, as they were required to do, upon the sometimes illusory facts presented by a hypothetical question, stated that the appellant at the time of the tragedy was suffering from epileptic automatism, or more plainly put, that he was insane as a result of epilepsy, and hence was involuntarily moved to commit the crime.

A number of witnesses for the State who were personally acquainted with the appellant and had been for a number of years, testified that when they saw him he usually seemed to be in a good humor and that they never observed anything unusual in his conduct. An assistant superintendent of nurses, who qualified as an expert in regard to insanity based upon many years' experience with lunatics and who saw the appellant during the time he was under treatment for his wounds at the hospital, stated that she frequently observed him and that at no time did he do or say anything indicative of mental unsoundness. From this tangled web of contradictory conclusions the jury evolved their verdict.

If any other facts are found necessary to the elucidation of any question raised by the appellant, they will be presented in the discussion of the case.

I.   It is contended that error was committed in the giving of an instruction on murder in the second degree; that under the evidence appellant was guilty of murder in the first degree or of no offense.

Instruction.

While there is, in our opinion, sufficient evidence of anger or a heat of passion on the part of appellant towards deceased at the time of the killing to authorize the giving of the instruction, as we have held in numerous cases (State v. Wieners, 66 Mo. 13; State v. Grugin, 147 Mo. l. c. 51; State v. Marsh, 171 Mo. 528; State v. Robertson, 178 Mo. 505; State v. Minor, 193 Mo. l. c. 612; State v. Bobbitt, 215 Mo. 10; State v. Johnson, 192 S. W. l. c. 442), the contention may be more satisfactorily determined under what is termed our criminal Statute of Jeofails (Sec. 5115, R. S. 1909, now Sec. 3908, R. S. 1919) which provides, in effect, that no judgment or other proceeding shall be deemed stayed or in any manner affected because the evidence shows or tends to show the defendant to be guilty of a higher degree of the offense than that of which he is convicted, and also another statute (Sec. 4903, R. S. 1909; now Sec. 3692, R. S. 1919) more specifically applicable to the case at bar, which provides: "Upon indictment for any offense consisting of different degrees, as prescribed by this law, the jury may find the accused not guilty of the offense charged in the indictment, and may find him guilty of any degree of such offense inferior to that charged in the indictment, or of an attempt to commit such offense, or any degree thereof; and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide." Construing this statute in State v. Barnes, 204 S. W. l. c. 266, we have held that the giving of an in-

struction authorizing a conviction of murder in the second degree when the evidence conclusively showed that the crime was murder in the first degree, is not error. The reason for this conclusion is to be found, first, in the express authority of the statute, and, second, in that the instruction for the lower degree being favorable rather than otherwise to the defendant, he has no ground of complaint. [State v. Clinton, 278 Mo. 344; State v. Whitsett, 232 Mo. l. c. 522; State v. Bobbitt, 215 Mo. l. c. 38; State v. West, 202 Mo. l. c. 138 et seq.; State v. McMullin, 170 Mo. l. c. 630; State v. Frazier, 137 Mo. l. c. 340; State v. Berkley, 109 Mo. l. c. 675.]

II. Appellant assigns error in the refusal of the trial court to permit him to introduce in evidence certain subpœnas and records of court entries which, it was alleged, would tend to show that, while appellant was being held under an information charged **Evidence before Grand Jury.** with the same crime for which he was being tried; his relatives and other witnesses had been brought before the grand jury and required to testify concerning the crime; and that the transcript of such testimony was being used by the prosecuting attorney in the examination of the witnesses at the trial, to appellant's prejudice. This assignment seeks for its support Section 5078, Revised Statutes 1909, now Section 3870, Revised Statutes 1919, which provides, in effect, that after the finding and returning of any indictment, neither the foreman of the jury, nor the prosecuting attorney, nor the clerk of the court shall have the right to cause any subpoena or other process to be issued for any person who is known or believed by such foreman, prosecuting attorney or the jury to be a witness in behalf of the person or persons so indicted, or who has been subpœnæd as a witness for such person or persons, or who such foreman, prosecuting attorney or jury may have reason to believe will be sworn as a witness for such person or persons in regard to a matter or matters charged in such indictment, ex-

cept upon the written order of the judge of the court in which such indictment is returned. It is not contended that the express terms of this statute were violated, but that they should be so construed as to inhibit the issuance of subpoenas by a grand jury for the examination of witnesses of one charged by information as well as by indictment. The purpose of the statute is evident. The examination of witnesses before a grand jury is an *ex parte* proceeding, and after an indictment has been returned against the accused it would afford the State an unfair advantage to secretly interrogate his witnesses. The reason for a like inhibition upon a grand jury when the accused is charged by information does not exist. Filed, as the information is, by the prosecuting attorney, who acts independently of the grand jury, his action, in the absence of an express statute, should not be held to limit the power of the grand jury, whose duty it is to diligently inquire and true presentments make of all offenses against the laws of the State in that county. Furthermore, the inhibition is inapplicable except as to indictments, because the State has no power to interrogate witnesses for the accused after the filing of an information except at the preliminary examination or upon the trial. This conclusion finds support in our ruling in State v. Faulkner, 175 Mo. l. c. 604, where we held that the statute should be strictly construed to prohibit the issuance of process for witnesses by a grand jury only "after the finding and returning of an indictment." Subsequently, in State v. Lehman, 175 Mo. l. c. 626, the statute was again under consideration and the ruling in the Faulkner case was approved.

Incidentally, it may be remarked that the record at bar discloses that upon the finding and returning into court by the grand jury of the indictment against appellant, the prosecuting attorney entered a *nolle prosequi* to the information. The only pertinency of this is its legal effect in nullifying the information. [State v. Taylor, 171 Mo. l. c. 473; State v. Williams, 191 Mo. l.

c. 212.] It is not contended by the appellant that there was any irregularity in the finding or returning of the indictment against him; but in some manner, not definitely stated, it is insisted that the refusal of the trial court to permit the papers and record entries in regard to the information being introduced in evidence, was prejudicial to him. There is no merit in this contentention. The information having been legally suspended by the finding and return of the indictment and actual dismissal of the former by the prosecuting attorney in recognition of this suspension, all matters in relation thereto were foreign to the case on trial. The court, therefore, properly excluded the testimony offered, and we overrule appellant's contention.

III. Instruction numbered 8, given by the court, is alleged to be erroneous. It is as follows:

"Insanity is interposed by the counsel of the defendant, as an excuse for the charge set forth in the indictment.

Insanity.

"This defense, when established, is one which the law recognizes, and should insanity be proven, by the evidence in the case, to the reasonable satisfaction of the jury, it would be the duty of the jury, in that event, to acquit the defendant altogether.

"Insanity is a physical disease, located in the brain, which disease perverts and deranges one or more of the mental and moral faculties, so far as to render the person suffering from this affliction incapable of distinguishing right from wrong, in reference to the particular act charged against him, and incapable of understanding that the particular act in question was the violation of the law of God and of society.

"Wherefore the court instructs the jury that if they believe and find from the evidence that at the time he did the killing charged in the indictment, the defendant was so perverted and deranged in one or more of his mental and moral faculties, as to be incapable of understanding, at the moment that he killed Elizabeth Cle-

ments, that such killing was wrong, and that he, the defendant, at the time was incapable of understanding that this act of killing was a violation of the laws of God and of society; if the jury find that he was so insane, they should find him not guilty. Insanity is either partial or general. General insanity always excuses. Partial insanity does not always excuse. One may be partially insane and yet be responsible for his criminal act.

"The law does not excuse, unless the derangement is so great that it actually renders the person incapable, at the time of its commission, of distinguishing between right and wrong in the particular act charged and proved against him."

The use of the word "excuse" in the initial sentence instead of the word "defense" is urged as prejudicial. This is a rather finical distinction. One of the well defined meanings of an excuse is a justification. A defense is nothing more. An excuse is also defined, especially in legal literature, as a plea offered in extenuation of a fault. [Bouvier L. Dict.; State v. McDaniel, 68 S. C. 304; Reg. v. Harvey, Law Rep. 1 C. C. 284, 11 Cox, C. C. 662; 17 Cyc. 874.] A defensive plea, therefore, to a criminal charge is in a sense an excuse. We said as much in State v. Pagels, 92 Mo. l. c. 309 and in numerous later cases. BURGESS, J., in that virile English which characterized his best opinions, gave express recognition to this meaning of the word in State v. Lewis, 136 Mo. l. c. 92, in saying: "But the homicide being shown to have been committed by the defendant, the burden was upon her to show some legal *justification* or *excuse* for it, and if excusable on the ground of insanity, it must have been shown to the reasonable satisfaction of the jury."

In State v. Holloway, 156 Mo. l. c. 228, a capital case in which the verdict was sustained, the leading instruction begins with the identical language employed at bar, viz: "Insanity is interposed by the counsel for the defendant as an excuse for the charge set forth in the indictment."

286 Mo.—44

Later cases are of like effect. [State v. Speyer, 207 Mo. l. c. 555 and cases; State v. Paulsgrove, 203 Mo. l. c. 200.]

In the Paulsgrove and Holloway cases the leading instructions in each contained the following language: "Insanity is either partial or general. Total insanity always *excuses*. Partial insanity does not excuse." etc., and each closed with the following: "The law does not excuse unless the derangement," etc.

This should suffice to dissipate the tenuous plea of prejudice on account of the use of the word complained of.

The further contention is made that the instruction is erroneous in that it does not inform the jury as to the weight to be given the expert testimony. The jury was correctly informed as to the law in this regard in a separate instruction which, in like form, we approved in State v. Crane, 202 Mo. l. c. 84. It is exceedingly elementary that all of the law applicable to the case under the evidence need not be given to the jury in one instruction. Separate instructions are clearly permissible, the only limitation being that when construed together they shall correctly declare the law and present a harmonious whole. [State v. Shout, 263 Mo. l. c. 375.]

It is also urged that the instruction is erroneous in not authorizing an acquittal if the evidence disclosed that the appellant was "incapable of exercising his will." Where a plea of insanity is interposed, as at bar, the test of mental capacity is not whether the accused was capable of exercising his will, but whether, by reason of his insanity, he was rendered incapable of distinguishing between right and wrong at the time of the commission of the offense. [State v. Rose, 271 Mo. l. c. 27, and cases; State v. Paulsgrove, 203 Mo. l. c. 205; State v. Miller, 111 Mo. l. c. 551; State v. Turlington, 102 Mo. l. c. 654; State v. Erb, 74 Mo. l. c. 203.]

In the Rose case, after announcing the rule as above stated, we said: "This measure of mental responsibility has uniformly been applied in this State when the defense of insanity has been interposed. [Citing cases.]

"This rule accords with reason and avoids the technical distinctions invoked in other jurisdictions in the presence of a plea of insanity, which tends only to interfere with a wholesome administration of the criminal law. The presumption of sanity which always obtains in the absence of countervailing proof (State v. Barker, 216 Mo. 1. c. 544) was not removed in this case, and the jury was reasonably satisfied from a preponderance of the evidence that the defendant was sane at the time of the commission of the crime."

As in the Rose case, we find no cause for interfering with this finding.

The judgment of the trial court is therefore affirmed. All concur.