State v. Millsap.

## THE STATE v. O. R. MILLSAP, Appellant.

Division Two, October 6, 1925.

1. **INDICTMENT: Preliminary Hearing.** The grand jury may investigate, and indict one charged with a felony, although he has been arrested and is held for a preliminary examination, and is not bound to await the action of the examining magistrate.

2. ————: **Plea in Abatement: Special Term: Special Judge.** The regular judge, by written order filed with the clerk, in vacation, pursuant to statute (Sec. 2348a, Laws 1921, p. 254), called a special term of the circuit court, to be held on said day, reciting in the order that two persons were then confined in the county jail charged with having committed certain crimes, and were unable to give bond; that the regular term of said court would not convene for two months; and that said special term was called for the trial of said prisoners, and for the dispatch of such other business as might be proper. On that day a grand jury was regularly impaneled, sworn and charged by the regular judge, and the record recites that "it appearing that the regular judge is unable to be present and continue the holding of this special term, the clerk of this court doth proceed to hold an election of a special judge to continue holding said term of court." Five days previously a murder had been committed, and three days previously the appellant and his alleged accomplice had been arrested and lodged in jail, charged therewith, but they were not the prisoners named in the judge's order calling the special term. The special judge elected to continue the holding of the special term, and his partner, had been previously retained by the brother of deceased to assist in the prosecution, and he was a cousin of deceased, and his partner was regularly appointed assistant prosecuting attorney on said date. The regular judge was absent after the first day of the special term, and the special judge presided in his stead, and the indictments, charging appellant and the alleged accomplice with murder in the first degree, were returned by the grand jury so impaneled two weeks later, and at such special term. *Held*, that none of these things was illegal, and a subsequent timely plea to abate the indictment was properly overruled.

3. ————: **Special Judge: Cousin of Deceased: Counsel for State.** A judge who is interested or related to either party, or has been of counsel in any suit or proceeding, is disqualified to preside at the trial or to take part in the determination thereof; but a special

State v. Millsap.

judge, who is a cousin of the person defendant is charged with having murdered and whose firm has been retained to assist in the prosecution and whose partner has been regularly appointed assistant prosecuting attorney, is competent to receive an indictment returned by a grand jury impaneled at the special term over which he was regularly elected to preside and which he did not impanel or charge, although disqualified to sit at the trial of said defendant.

4. ———: Witnesses: Before Grand Jury: Children of Accused. The indictment is in no sense invalidated by the fact that defendant's children were subpoenaed and interrogated by the grand jury before the indictment was found.

5. ———: Charged both as Principal and Accessory. An indictment which charges in the one count that defendant murdered deceased and in another that he incited another person to commit the crime is not inconsistent. An accessory before the fact may be charged, tried and adjudged guilty of the offense in the same degree, and punished in the same manner, as the principal in the first degree. In legal effect the second count charges both the defendant and the accessory as principals in the commission of the crime, and one of the counts is simply superfluous.

6. MURDER: Sufficient Evidence: Circumstantial: Motive: Conspiracy. Although the evidence to establish defendant's guilt of murdering deceased by shooting him through a window at night is circumstantial, it is sufficient to support a conviction where the homicide is conceded, there is positive proof, out of defendant's own mouth, of a motive for killing defendant and of a conspiracy between him and another to kill him, and positive proof of substantial circumstantial facts, which are consistent with his guilt and inconsistent with his innocence, and which if true show that he was the murderer.

7. ———: Indorsement of Names of Rebuttal Witnesses on Indictment. Although the court before the trial began has sustained a motion to require the prosecuting attorney to indorse the names of all witnesses for the State upon the indictment, and although it is objected, to the offer of the State to produce in rebuttal witnesses whose names are not so indorsed, that the defendant and his attorneys are fifty or sixty miles from the place of the homicide and have had no opportunity to secure the attendance of witnesses, it is not error to permit the State to produce the testimony of such witnesses in rebuttal, where defendant makes no application for delay to secure countervailing evidence and makes no showing of surprise or prejudice, and especially where defendant has witnesses in attendance who are offered to refute such testimony.

State v. Millsap.

8. ————: **Evidence of Motive: Irrelevant Matters.** In the trial of a defendant for murder, it is not error to permit a witness to testify that, in a conversation with defendant in which defendant said that he could make whiskey and that deceased was the only man who could make him and his associate any trouble and if he interfered and was killed the witness would hear of it, defendant stated to witness that he would make whiskey and said associate would peddle it. Such statements, being a part of the same conversation, are not irrelevant or prejudicial to defendant's rights.

9. ————: **Instruction for Second Degree.** Where defendant is convicted of murder in the first degree, the giving of an instruction on murder in the second degree, although unauthorized by the evidence, is harmless.

10. ————: **Instruction: Alibi: No Evidence.** Where the jury necessarily understood the plain implications of an instruction for the State that if they found that the defendant incited and induced another to shoot and kill deceased it was not necessary that defendant should have been present aiding and abetting at the time the fatal shot was fired by such other, an instruction on *alibi* should not have been given, since its tendency was to mislead and confuse, but it evidently did not mislead and was not error.

11. **ARGUMENT TO JURY: Admissions.** Where defendant has testified in his own behalf counsel for the State may comment on his failure to explain damaging facts attributed to him by other witnesses, and may say to the jury that such facts are not denied, especially where such facts are pertinent as showing motive.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 103, p. 121, n. 6; Section 1263, p. 635, n. 18; Section 1568, p. 764, n. 54; Section 2029, p. 798, n. 74; Section 2240, p. 896, n. 85; Section 2506, p. 1063, n. 85: 17 C. J., Section 3691, p. 343, n. 8. Grand Juries, 28 C. J., Section 107, p. 808, n. 72. Homicide, 30 C. J., Section 406, p. 180, n. 40; Section 416, p. 189, n. 83; Section 539, p. 295, n. 15; Section 543, p. 299, n. 52; Section 548, p. 302, n. 11; Section 559, p. 312, n. 42; Section 713, p. 447, n. 64. Indictments and Informations, 31 C. J., Section 27, p. 576, n. 82; Section 182, p. 666, n. 54; Section 290, p. 740, n. 89, 96; Section 341, p. 778, n. 6. Judges, 33 C. J., Section 159, p. 1003, n. 22; Section 161, p. 1006, n. 85; Section 200, p. 1022, n. 45; Section 204, p. 1024, n. 95.

Appeal from Laclede Circuit Court.—*Hon. W. E. Burton,* Judge.

AFFIRMED.

*C. H. Jackson, J. W. Jackson, Geo. C. Murrell, N. J. Craig, Phil M. Donnelly* and *Wm. C. Irwin* for appellant.

(1) Defendant's plea in abatement should have been sustained for the reason that A. M. Curtis, who acted as

special judge during the deliberations of the grand jury and the returning of the indictment, was employed as attorney to prosecute defendant and had entered upon that employment before he qualified as special judge, and he well knew at the time he qualified as special judge that he was a first cousin of the deceased and knew that the grand jury was being convened to investigate this case. Before the grand jury was empanelled this defendant had been charged before a justice of the peace with killing deceased, and had given a bond for his appearance. The fact that after defendant had given bond he was placed in jail and denied bond, and the fact that his two minor children, known to be important witnesses for the defendant, were ordered before the grand jury, show that the judge was biased and prejudiced against the defendant. Secs. 2345, 2351, 2355, 2356, 2441, 3870, R. S. 1919. (2) It being the theory of the State that Ernest Johnston killed the deceased and that defendant was present, aiding, abetting, assisting and procuring Johnston, there is no evidence that defendant was any nearer than two miles of the place where deceased was killed on that night. There is no evidence that Johnston was any nearer than two miles of the place where the deceased was killed on that night except on the theory of the State that the overshoes that made the tracks were the overshoes of Johnston, without any proof from any source that Johnston ever had a pair of overshoes. This in the face of the testimony of witnesses for the State that the imprint of Johnston's shoes in the overshoes indicated that the overshoes had been worn by Johnston was incompetent and of no probative effect, when Lonnie Gray, the State's witness who found the overshoes, made the positive assertion that they were not the overshoes found by him. Then in the face of all of this testimony the court should have sustained the defendant's demurrer to the evidence and discharged the defendant. State v. Singleton, 243 S. W. 147.; 12 C. J. 488; State v. Morney, 196 Mo. 49; State v. Welton, 225 S. W. 965; State v. Crabtree, 170 Mo. 642; State v.

Remley, 237 S. W. 489; State v. Scott, 117 Mo. 665; State v. Francis, 199 Mo. 671; State v. Madison, 177 S. W. 347; State v. Ruckman, 253 Mo. 500; State v. Hollis, 225 S. W. 952.; State v. Staats, 246 S. W. 953. (3) The State offered testimony of comparisons of tracks found near the house of Silas Moody with that of some overshoes produced in court. They offered evidence, over the objection of the defendant, that the shoes of Ernest Johnston had been compared with the overshoes and that the imprint in the overshoes compared with the soles of the shoes of Ernest Johnston. There is no evidence whatever that Ernest Johnston owned a pair of overshoes, that he had ever worn a pair of overshoes, or that he had ever been seen with a pair of overshoes, all of which in view of the testimony of Lonnie Gray, the party who it is claimed found the overshoes, that the overshoes exhibited at the trial of this case and used by the witnesses in the comparisons of these shoes positively were not the shoes found by himself. State v. Goddard, 162 Mo. 198; State v. Thomas, 99 Mo. 235. (4) The court should not have permitted W. H. Pasley, or his wife to testify on the last day of the trial, after a motion had been sustained requiring the State to list the names of all its witnesses on the indictment, as it appeared in the record that these witnesses had been subpoenaed by the State, and the State knew this at the time said motion was sustained, but waited until it was too late for the defendant to get witnesses from another county and sixty or more miles away. It is evident that the State held these witnesses back and did not have them appear in Lebanon until the last day, all of which was prejudicial to the rights of the defendant.

*Robert W. Otto,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for respondent.

(1) The special term of the Circuit Court of Wright County at which appellant was indicted was legally

called.   Laws 1921, sec. 2348a, p. 254.    (2)   The grand
jury was legally called and summoned.   R. S. 1919, sec.
2350; State v. Brown, 195 Mo. App. 590.    (3)   The in-
dictment charges murder in the first degree and is in
approved form.    State v. Clay, 201 Mo. 681; State v.
Ferguson, 278 Mo. 131; State v. Gore, 292 Mo. 182.    (4)
Defendant's plea in abatement was properly overruled.
The special term of the circuit court at which appellant
was indicted was legally called.   Sec. 2351, R. S. 1919.
(a)   After the regular judge called the special term
of court and ordered a grand jury at said special term,
one A. M. Curtis was elected special judge to preside
over said special term after its first day's session.   Com-
plaint is made that Special Judge Curtis was a cousin
of deceased and was at one time employed in this case
on the part of the State, and that for such reasons appel-
lant's plea in abatement should be sustained.   There was
no suit or proceeding pending before the special judge
until after the indictment was returned.   The record does
not show that such special judge took any steps whatever
in the case.   Using the language of the statute, he did not
"sit on the trial or the determination thereof."   Sec.
2345, R. S. 1919. The record does not show that such spe-
cial judge charged the grand jury or gave them any advice
or instructions during their deliberations.   The presump-
tion from the facts shown in the record is that the reg-
ular judge instructed the grand jury.   The record posi-
tively shows that the regular judge called the special
term of court, ordered the grand jury, and the testimony
of the clerk shows that the regular judge did not attend
court after the first day.   The record also shows that
said special term of court was called for the trial and
disposition of certain criminal cases and other matters
pending in said court.   The presumption of right action
by the judge of a court obtains in absence of evidence to
the contrary.   Price v. Springfield Real Est. Assn., 101
Mo. 117.   (b)   Complaint is made that defendant's chil-
dren who were important witnesses for him were sub-
poenaed before the grand jury and compelled to testify.

This was done prior to the finding of the indictment, and was proper. Such matters are controlled by statute, and such statute has been construed by this court. Sec. 3870, R. S. 1919; State v. Weagley, 286 Mo. 686. (5) These instructions are such as have been many times approved by this court, and appellant has advanced no reason why any or all of them should not have been given. State v. Hudspeth, 159 Mo. 178; State v. Cushenberry, 157 Mo. 185; State v. Prunty, 276 Mo. 359; State v. Garrett, 276 Mo. 310; State v. Grant, 157 Mo. 68; State v. Dooms, 280 Mo. 84. (6) Each of the refused instructions was fully and fairly covered by other instructions given by the court. "Defendant has no right to have the State's instructions duplicated." State v. Chick, 282 Mo. 51. (7) Complaint that witnesses whose names were not indorsed on the indictment were permitted to testify is not well founded. State v. Stegner, 276 Mo. 438; State v. Barrington, 198 Mo. 68; State v. Myers, 198 Mo. 225.

HIGBEE, C.—On the evening of December 23, 1923, between eight and nine o'clock, Silas Moody, in company with his wife, infant child and mother-in-law, was seated in the south room of his home in Wright County, Missouri. He was seated immediately in front of the south window. The blinds were up. He was killed in this position by a shot fired from without, the charge passing through the window and lodging in his face, neck and shoulder. He died in a short time, making no statement. No witness saw the shot fired. Mrs. Moody seized a gun from over the bed, ran out of the house in search of the ruffian, but found no one. Suspicion pointed to this defendant and Ernest Johnston. They were arrested on December 25, 1923, and indicted separately on January 10, 1924, at a special term of court. This defendant was placed on trial in the circuit court of Laclede County, where the case went on a change of venue. The trial resulted in his conviction of murder in the first degree on the second count, and a sentence to life imprisonment, from which he appeals.

The first count of the indictment charges the defendant as principal. The second count charges that Ernest Johnston committed the murder and that defendant was an accessory before the fact.

The evidence for the State is that in the summer of 1923, while Johnston and Millsap were working at Coffeyville, Kansas, the appellant approached one Albert McIntosh and suggested to him that he could sell his Ford automobile to Ernest Johnston; that he and Johnston were going back to Missouri where he would make whiskey and Johnston would peddle it. McIntosh advised him not to do that, but defendant said there was but one man who could cause them any trouble; that that man was Sil Moody; that "we laid plans to kill him once before when I lived on Ernest's place, for meddling;" that he was making whiskey then. McIntosh suggested to him that it would be pretty poor business and a man might stand a chance of going to the penitentiary. To this the appellant replied; "Well, it's damned hard to prove anything on a man that you didn't see him do," and he added that if Silas Moody interfered and was killed he (McIntosh) would hear of it. Shortly thereafter Johnston and Millsap returned to Missouri.

A few days prior to the killing, Millsap went to the home of James Adamson and had a private conversation with him, in which he said: "Jim, I am up against it· . . . me and Ernest Johnston was running off a batch of whiskey this evening and Sil Moody come up. We looked out and seen Silas Moody come up. We made up our minds at once what to do."

In this conversation Millsap further stated that they made up their minds at that time to kill Moody; that they drew a gun on him and made him get down on his knees and promise he would leave, and would tell nothing and would never come back; that after they turned him loose they made up their minds to kill him, wrap his body in a sack, carry it to the top of the hill, lay it under a tree, fire his gun and leave him. Adamson remonstrated, stating that he (Millsap) would get himself into

serious trouble, but the appellant replied: "Jim, if he don't leave here we will kill him." Appellant then left Adamson and called the latter's daughter, Della Moody, into the house and had a conversation with her in which he told her that he and Ernest Johnston had been down at his hen house making liquor; that they saw Silas Moody coming; that Ernest took his shot gun and drew it on Moody and made him promise to leave and not tell anything on them. He further stated in that conversation that if Moody did not leave the country they would kill him. In a conversation with Eli McIntosh shortly prior to the killing, appellant said, referring to the same incident, that "Moody snuck up there to his hen house where he was banking around it, with a gun under his arm, and that Ernest Johnston drew a gun on him and made him hit the hikes." He said Ernest would kill Moody.

In a conversation with William Devers, about a month before the killing, appellant said that he thought Sil Moody was getting his rabbits, and if he caught him he aimed to shoot him. As they started home that afternoon, appellant said: "We'll get that s—o—b— yet."

On the day of the killing Millsap and Johnston were seen together. W. H. Pasley and wife testified that they passed Millsap's house Sunday morning and again Sunday evening; that they saw Millsap and Johnston in the house together on both occasions.

J. M. Crewse, the Sheriff of Wright County, testified that when he arrested Millsap and Johnston, on December 25, he found them together at Millsap's home, with a 32-Colt's pistol and a 12-gauge single barrel shotgun in the house at the time.

On the day following the killing appellant met Della Moody, James Adamson and William Devers in the road, and, speaking of the killing, said that he knew he was not guilty of killing Moody for he didn't go to meeting that night but stayed home and didn't get up until after sunup the next morning. He then asked Della Moody not to say anything about what he had said to her at her

father's home, for it was liable to get some innocent person into trouble.

While Johnston and Millsap were in jail they told the deputy sheriff that if they were turned loose and given $500 they would show up the man who did the killing.

Immediately following the killing footprints were discovered in the mud south of the window through which the gun was fired. They led around the house to the north. That evening, between nine and ten o'clock, one Lonnie Gray, returning from a hunt, found a rubber overshoe in front of his house. Gray lived about a quarter of a mile north of the deceased. The following morning Gray found the mate of this overshoe near his front gate. He took the overshoes that morning to Silas Moody's house and delivered them to the sheriff who marked them with his initials. They were kept in custody by the sheriff and prosecuting attorney until the day of the trial. These rubbers were found to fit exactly in the footprints above mentioned. Following the arrest of Johnston, the shoes he was wearing were taken off his feet. The rubbers fitted them exactly. The outside surface of these shoes indicated that rubbers had been worn, the glossy or polished surface thereof showing as far up the side of the shoes as the rubbers would extend. The shoes had been half-soled. They were rubber heeled and the tacks in the half soles corresponded exactly with the imprints made on the inside of the bottoms of the rubbers, and the winged trademarks on the bottoms of the rubber heels were plainly visible and corresponded exactly with the impressions thereof in the overshoes. In addition to this the general impression made by the heel and the half-sole fitted exactly, clearly indicating that these particular overshoes had been worn by Johnston. No explanation is offered as to how they were left at Lonnie Gray's, but the proof shows that Gray lived on the public road a quarter of a mile north of Moody's house and that to go from Moody's to Johnston's one would ordinarily travel the road leading past Gray's home.

There was some testimony tending to discredit this testimony. Gray denied that the overshoes produced at the trial were the ones he delivered to the sheriff. He said the overshoes he found were newer than those produced at the trial. The sheriff and the prosecuting attorney, however, both testified that these were the same overshoes. There was other testimony to the effect that at the preliminary hearing the shoes were in the possession of the defendant and his counsel, and that they were turned inside out and otherwise roughly handled.

The defendant testified that he spent Sunday afternoon and evening at the home of Walter Johnston, arriving there between three and four o'clock; that his son came shortly after he got there; that Ernest Johnston was there at the time; that they all ate supper together and that he went home between half past eight and nine o'clock that evening. In this he is corroborated by Mrs. Walter Johnston and by Edna Johnston, her eleven-year-old daughter. They all testified that Ernest Johnston stayed all night there, retiring about nine o'clock. Mrs. Julia Williams testified that she saw Millsap and his son going home that evening about nine o'clock.

There was some testimony introduced to the effect that the witness Pasley and his wife were mistaken in the identity of the parties whom they took to be Millsap and Johnston at the Millsap home on the date of the killing. Ralph Fagan testified that he, Elvin Millsap and Scott Millsap were at appellant's home Sunday afternoon and that the appellant and Ernest Johnston were not there. The defendant offered evidence that his general reputation as a law-abiding citizen was good; the State offered evidence that it was bad.

The defendant withdrew his plea of not guilty and filed a plea in abatement. It charges that the grand jury had been formed improperly, there being no regular term of the court convened; that W. L. Vandeventer had been employed to assist the prosecuting attorney in prosecuting the defendant and was not an assistant prosecuting attorney, and that he appeared before the grand jury,

questioned the witnesses and advised the grand jury with reference to the case; that two of defendant's infant children, known to be the defendant's witnesses, were subpoenaed by the State and were forced to give their testimony before the grand jury while defendant was confined in jail; that at said term of court, although C. H. Skinker was the regular circuit judge of Wright County, A. M. Curtis presided as circuit judge and was at the time a member of a partnership firm between W. L. Vandeventer and himself.; that Curtis acted as circuit judge, and is and was a first cousin to the deceased Silas Moody and was disqualified for that reason; that the indictment is illegal and inconsistent and charges that Ernest Johnston killed Silas Moody. It is further alleged that before the indictment was found, defendant had been arrested on a complaint filed before a justice of the peace and had given bail for his appearance and that the indictment was preferred to prevent him from having a preliminary examination before said justice.

I. The statute, Section 3848, Revised Statutes 1919, requires that before the prosecuting attorney shall file an information charging any person with a felony such person shall first be accorded the right of a preliminary examination. But a grand jury may investigate and indict one charged with a felony, although he has been arrested and is held for a preliminary examination, and is not bound to await the action of the examining magistrate. [State v. Gieseke, 209 Mo. 331 (2), 108 S. W. 525.] It appears, however, that the defendant was accorded a preliminary examination.

Preliminary
Examination.

II. On December 28, 1923, Hon. C. H. Skinker, judge of the Eighteenth Judicial Circuit, by a written order filed with the clerk of the Circuit Court of Wright County, in vacation, pursuant to Section 2348a, Laws 1921,

p. 254, called a special term of said court to be held on said day, reciting in said order, *inter alia,* that George Stubbs and Oly Dean were then confined in the jail of said county charged with having committed certain crimes, and that they were unable to give bond and that the regular term of said court was two months distant. Said special term was regularly called for the trial of said prisoners and for the dispatch of such other business as might be proper. The record shows that on that day a grand jury was regularly impaneled, sworn and charged by Judge Skinker as authorized by Section 2351, Revised Statutes 1919. It next recites that, "it appearing that the regular judge is unable to be present and continue the holding of this special term, the clerk of this court doth proceed to hold an election of a special judge to continue holding said term of court," which resulted in the election of Hon. S. M. Curtis as special judge to continue the holding of said special term of court, whereupon said Curtis took the oath required. Curtis and Vandeventer had been previously retained by a brother of Silas Moody, deceased, to assist in the prosecution. Judge Curtis was related as cousin to Silas Moody, deceased, and Mr. Vandeventer was regularly appointed assistant prosecuting attorney on December 28, 1923. Judge Skinker was absent after the first day of this special term. Judge Curtis presided in his stead. The indictment was returned on January 10, 1924, during the continuance of the special term, and the grand jury was discharged.

*(margin note: Special Judge: Special Term.)*

The election of a special judge was authorized by Section 2441, Revised Statutes 1919, and seems to have been regular and in compliance with the statute. [State v. Punshon, 133 Mo. 50, 34 S. W. 25.] While a judge who is interested or related to either party, or who has been of counsel in any suit or proceeding, is disqualified to sit on the trial or determination thereof (Sec. 2345, R. S. 1919) yet there can be no doubt that Special Judge Curtis was competent to receive the indictment returned by the grand jury against the defendant, although dis-

qualified to sit at the trial of the cause. [State v. God-dard, 162 Mo. 234, 62 S. W. 697.] The complaint that defendant's children were subpoenaed and interrogated by the grand jury before indictment found is without merit; it was not forbidden by Section 3870, Revised Statutes 1919. It was the sworn duty of the grand jury to make diligent inquiry of all persons having any knowledge touching the offense under investigation and due presentment make. [State v. Faulkner, 175 Mo. 566, 75 S. W. 116; State v. Weagley, 286 Mo. 677 (2), 228 S. W. 817.] The plea in abatement was properly overruled.

III. The defendant moved to quash the indictment for the following reasons: It is inconsistent in charging in the first count that the defendant murdered the deceased and in the second count that defendant incited another person to commit said crime; that defendant is not advised by said indictment of the crime he is to defend against; that the indictment is vague and indefinite and does not charge any crime known to the laws of Missouri.

Indictment.

As heretofore stated, the first count charges the defendant as principal with murder in the first degree. The second count charges Ernest Johnston with murder in the first degree for the killing of Silas Moody and that O. R. Millsap before the said murder was committed did feloniously, etc., incite, move, procure and counsel, hire, command, assist and abet the said Ernest Johnston to do and commit the said felony and murder in manner and form aforesaid, etc.

An accessory to any murder or other felony before the fact shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried and convicted and punished in the same manner as the principal in the first degree. [Sec. 3687, R. S. 1919.] "The indictment may either allege the matter according to the fact or charge both the principal and the accessory as principal in the first degree." [State v.

Schuchmann, 133 Mo. 125, 33 S. W. 35; State v. Sykes, 191 Mo. 81, 89 S. W. 851.] The second count, in legal effect, charges Johnston and Millsap as principals in the commission of the crime. Neither count is vague or indefinite nor are they inconsistent. Each distinctly charged the defendant with the commission of the crime of murder in the first degree. One of the counts is super-fluous.

In State v. Reeves, 276 Mo. 346, 208 S. W. 87, Judge WILLIAMS said:

"It will be seen by reference to the indictment that each of the three counts charge the commission of the same crime. The first count charges each as principal and the second and third count charges each respectively as principal and accessory before the fact. The real necessity for formally charging the defendants as accessories before the fact does not appear, since under the present law in this State such accessory 'may be charged, tried and convicted and punished in the same manner as the principal in the first degree.' But whatever may have been the purpose of the pleader, it is immaterial here."

The motion to quash was properly overruled.

IV. Appellant insists that the evidence, which is circumstantial, failed to make a submissible case and that the court erred in overruling his demurrer. He insists there is no evidence in the record that Johnston was within two miles of Moody's house on the night deceased was killed except on the theory of the State that "the overshoes that made the tracks were the overshoes of Johnston, without any proof from any source that Johnston ever had a pair of overshoes . . . when Lonnie Gray, the State's witness who found the overshoes, made the positive assertion that they were not the overshoes found by him." Counsel in their brief further say: "They (the State) offered evidence, over the objection of the defendant, that the shoes of Ernest Johnston had been compared with the overshoes and that the imprint in the overshoes compared with the soles

*Sufficient Evidence.*

of the shoes of Ernest Johnston. There is no evidence whatever that Ernest Johnston owned a pair of overshoes, that he had ever worn a pair of overshoes, or that he had ever been seen with a pair of overshoes." It is also contended there is no proof of a conspiracy between Johnston and the defendant to kill Moody. In support of their contention that the demurrer to the evidence should have been sustained, learned counsel cite State v. Singleton, 294 Mo. 346, 243 S. W. 147, and many other cases where, as here, the conviction was sought on circumstantial evidence. In the Singleton case, at page 360, RAILEY, C., quoted from State v. Morney, 196 Mo. 1. c. 49, 93 S. W. 1117, as follows:

"When a conviction for felony rests altogether upon circumstantial evidence, as in this case, 'the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.' [12 Cyc. 488, and authorities cited.]"

And again, on page 361, quoting from State v. Ruckman, 253 Mo. 499, 161 S. W. 705:

" 'Evidence of motive is admissible, as furnishing one link in the chain of circumstances, tending to establish guilt, but mere showing of motive, uncorroborated by other facts and circumstances inconsistent with innocence, is not sufficient prima-facie showing to authorize the submission of the defendant's guilt to the jury.' "

In the Singleton and Ruckman cases, aside from proof of motive, there was no fact or circumstance pointing toward defendant's guilt. In the instant case the homicide is conceded. There is ample proof of motive and conspiracy. The defendant told McIntosh that he and Johnston were going to return to Missouri and make whiskey; that Sil Moody was the only man that could cause them any trouble; that "we" laid plans to kill him once before; "that was when defendant lived on Johnston's place;" that McIntosh would hear of Moody be-

ing killed if Moody interfered. It is unnecessary to repeat the evidence on this feature of the case.

About an hour after the homicide was committed Gray found an overshoe in front of his house, and the following morning he found its mate near his front gate. One going from Moody's to Johnston's house would ordinarily pass by Gray's house. Gray delivered these overshoes to the sheriff on December 24th. Crewse, the sheriff, put his initials on them and, despite the inability of Gray to identify them at the trial because they did not look as new as those found by him, they were positively identified by the sheriff and Mr. Rayburn, the prosecuting attorney. Their identity was a question of fact for the jury. The shoes worn by Johnston when arrested had been half-soled. The imprint of the tacks in the soles as well as the imprint of the rubber heels were found in the overshoes at the time of the comparison. That the tracks outside the window where Moody was shot were made by these overshoes was established to the satisfaction of the jury. Indeed, from the citation from appellant's brief, this does not seem to be contested. The direct evidence clearly establishes, out of the mouth of the defendant, a motive and a conspiracy to kill Moody. Tested by the rules applicable where a conviction for a felony rests solely on circumstantial evidence, we are of the opinion that the evidence justified the jury in finding the defendant guilty as charged in the second count of the indictment. The demurrer to the evidence was properly overruled.

V. Error is assigned in permitting the State in rebuttal to offer the testimony of the witnesses Pasley and his wife, over the objection that the court before the trial was begun had sustained a motion to require the prosecuting attorney to indorse the names of all

**Indorsement of Witnesses.** of the witnesses for the State on the indictment, and because the defendant and his attorneys are fifty or sixty miles from where the homicide occurred and they have no opportunity to secure the attendance of witnesses. Counsel did not in terms as-

sert that the names of these witnesses were not indorsed on the indictment, but may assume that was true. They made no application for delay to secure countervailing evidence, nor any showing of prejudice or surprise. In fact, from the statement of the testimony heretofore set out, it appears the defendant had witnesses in attendance who were offered to refute the testimony of Mr. and Mrs. Pasley. We have considered this question in State v. Barrington, 198 Mo. 23, 95 S. W. 235; State v. Lawson, 239 Mo. 591, 145 S. W. 92, and in other cases and are of the opinion there is no merit in this contention.

VI. Appellant objected to the testimony of Albert McIntosh as to statements made by defendant to witness that he (defendant) would make whiskey and Johnston would peddle it, as irrelevant and prejudicial. This was a part of the defendant's conversation with the witness in which defendant in the same conection said that he could make whiskey and that Silas Moody was the only man who could make them any trouble and if he interfered and was killed McIntosh would hear of it. It was admissible to prove motive, conspiracy and threats to kill Moody. Objections to similar testimony of other witnesses were properly overruled.

*Evidence of Motive.*

VII. The court instructed the jury on murder in the first degree and submitted the case to the jury on the hypothesis that Ernest Johnston killed and murdered Silas Moody and that the defendant was an accessory before the fact, as charged in the second count of the indictment, and that unless they so found they should find the defendant not guilty. The court also gave an instruction on murder in the second degree. This was not authorized by the evidence but was harmless.

*Instructions.*

The court gave instructions to the jury for the defendant: (5) that if there was no evidence connecting the defendant with the killing of Silas Moody, deceased,

other than the threats or declarations in evidence, they should find him not guilty; (6)   an instruction on alibi; (7)   an instruction on circumstantial evidence.; (8)   an instruction on good character; (9)   a cautionary instruction on verbal statements made by the defendant, and (10)   an instruction on the burden of proof, the presumption of innocence and reasonable doubt.

The instructions on alibi should not have been given, but, notwithstanding its tendency to mislead and confuse, the jury understood the plain implications of the instruction given for the State that if they found the defendant incited or induced Johnston to shoot and kill the deceased it was not necessary that he should have been present aiding or abetting at the time the fatal shot was fired by Johnston.   With the exception of this instruction on alibi and the instruction on murder in the second degree, the court correctly instructed the jury upon all questions arising in the case so far as necessary for their information in giving their verdict.   The court refused other instructions asked by the defendant.   One about the tracks found near the window through which the shot was fired was a comment on the evidence; one on the subject of alibi, which was properly refused; three on the presumption of innocence, and eight on circumstantial evidence.   The last eleven were properly refused as they were covered by those already given.

VIII.   Complaint is made that the prosecuting attorney in his closing argument said:   "The defendant denies something here, but the liquor part of it he never denied."   The complaint is that this was prejudicial and improper argument.   The defendant took the witness stand and denied making any threats to kill Moody as testified to by the witnesses for the State, and also denied any complicity in the crime.   He did not, however, deny making the statements about making whiskey, testified to by the witnesses, which were part and parcel of the conversations.

Appellant's counsel in their brief and argument, say:   "All the testimony submitted with reference to

the manufacture of whiskey was submitted with the idea that it was the motive of the killing of Silas Moody.'' From their viewpoint the remarks of the prosecuting attorney were pertinent and relevant and not prejudicial to the defendant. ''When defendant voluntarily testified in his own behalf, the counsel for the State in his closing argument may comment on his failure to explain damaging facts attributed to him by other witnesses.'' [State v. Murchie, 225 S. W. 954; State v. Drew, 213 S. W. 106. See also State v. Prunty, 276 Mo. 377, 208 S. W. 91.]

We have considered all errors assigned in the brief of appellant's learned counsel. Other assignments in the motion for new trial are without merit. The case was well tried. The verdict is abundantly supported by substantial evidence and the judgment is accordingly affirmed. *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.