STATE of Missouri, Respondent,

v.

Cora GARRETT, Appellant.

No. 44339.

Supreme Court of Missouri.

Division No. 2.

Sept. 12, 1955.

Motion to Transfer to Court En Banc Denied
Oct. 10, 1955.

C. W. Terry, James P. Roach, Camdenton, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

LEEDY, Presiding Judge.

Cora Garrett (hereinafter called defendant) was charged with murder in the first degree in having shot and killed her former husband, Loyd Dawson, in Camden County on July 6, 1952. Tried in the circuit court of that county, she was convicted of manslaughter, and sentenced to imprisonment in the penitentiary for a term of five years, and she appeals. The points relied on for reversal are: (1) That "the verdict is against the evidence, and there was no substantial evidence to support the verdict;" (2) that the "verdict is against the law as declared in the instructions;" (3) that the court erred in instructing on manslaughter; and (4) error in qualifying a panel of only 24 jurors instead of 30, thus improperly limiting the number of defendant's peremptory challenges.

Since defendant concedes "that under the evidence adduced at the trial, the defendant was either guilty of murder in the first degree, or else was innocent of the charge by reason of having shot the deceased by accident or in self-defense of her person and home," the particular facts and circumstances surrounding the killing are of no importance in determining the questions presented on this appeal, and hence will not be noticed in detail.

■ Dissatisfied with defendant's statement of facts, the state prepared its own, but in so doing wholly omitted compliance with 42 V.A.M.S. Supreme Court Rules, Rule 1.08(c) governing specific page references. We ignore the statement not alone because of this violation, but also because the size of the transcript forbids any such foray upon the time of the court as would be involved in the process of verifying the facts thus asserted.

It does appear, however, that defendant and deceased had been drinking in a tavern at Macks Creek during the late afternoon and early evening preceding the homicide. Some disagreement arose, as a result of which she was compelled to, or at any rate did, walk the distance from the tavern to the premises (some seven miles in the country) where the killing occurred, which was the home occupied by them prior to their then recent divorce, and where defendant was living with a daughter of deceased by a former marriage. There were no eyewitnesses other than defendant and deceased, and for our purposes the following skeletonized outline of her version will suffice: When she reached home, it was dark, and she noticed a light on in the kitchen. She entered through the front door, and "he [deceased] was swearing and throwing things in the kitchen;" that as she came through the living room and the dining room she "got the gun beside the dresser to make him leave, and I walked into the [kitchen] door, he was standing by the cabinet, he put his hand in his right pocket and lunged at me and I don't know what happened;" then when he lunged at her she stepped back, and that is when the gun went off; that she did not have it at her shoulder, or in shooting position, and did not have her hand near the trigger. Her further testimony was vague, equivocal and inconsistent on the question of whether she acted in self-defense, or whether the gun discharged accidentally.

Various witnesses testified to statements made by defendant shortly following, and at the scene of, the homicide, of which the following are typical examples: "Sheriff, I finally had to kill him. * * * He lunged at me, and I shot him." "You made me do it; I didn't mean to shoot you, but you made me shoot you." "You made me shoot you, Loyd, and I didn't aim to do it."

■ The court instructed on murder in the second degree, manslaughter, self-defense and accident, and, as stated, the jury found defendant guilty of manslaughter. As to those portions of her assignments I and II complaining that "the verdict is against the evidence * * * [and] against the law as declared in the instructions," we must say, as has been said time, and time, and time again, that they are too general to preserve anything for review. See extensive annotation following § 547.-030, 39 V.A.M.S. 512, 558–561, notes 106–111. The remaining and good portion of one of these assignments (that "there was

no substantial evidence to support the verdict") would ordinarily necessitate a probing of the facts, but not so here, in view of defendant's admission that under the proofs adduced the state made out a case of murder in the first degree. What defendant urges under this assignment is that there were no facts in evidence sufficient to reduce the grade or degree of the homicide from first degree murder to manslaughter, and hence no evidence to suppport her conviction of the latter offense. For like reason it is charged that the court committed reversible error in instructing on manslaughter.

These precise points have been so often ruled adversely to defendant that citations would seem to be unnecessary. We are not asked to reexamine these precedents (indeed, they are not referred to in either brief), but inasmuch as they are controlling in the circumstances of this record, we shall mention only a few of them. In State v. Morrow, Mo., 188 S.W. 75, 76, the charge was murder in the second degree; conviction for manslaughter. Defendant contended that under the facts in the case there was no evidence on which to bottom an instruction on manslaughter. A point had attempted to be made calling in question the sufficiency of the evidence to uphold the verdict. It was there said: "Manifestly, however, there is no evidence of involuntary manslaughter in the case, and, since defendant was convicted of this offense, it may be urged that the point made in the motion for a new trial touching the lack of evidence to uphold the verdict of manslaughter ought to be sustained. Upon the record before is defendant was either guilty of murder in the second degree, or he should have been acquitted on the ground of self-defense. The instruction for manslaughter, as we say above, should not have been given, for there is no manslaughter in any degree in the case; but since the court so instructed and the jury saw fit to temper justice with mercy, and since we are forbidden to reverse a case where the evidence shows defendant to be guilty of a higher degree of crime than that of which he was convicted (section 5115, R.S.1909

[Section 545.030 RSMo 1949, V.A.M.S.]), we have no lawful excuse for interfering. Besides this general statute of jeofails above cited, we have an applicatory statute which specially applies to homicides and which substantially provides that any person found guilty by a jury of any degree of manslaughter shall be punished pursuant to the verdict, although the evidence shows him to be guilty of a higher degree of homicide. Section 4903, R.S. 1909 [Section 556.220 RSMo 1949, V.A.M.S.]; State v. Todd, 194 Mo. 377, 92 S.W. 674; State v. Whitsett, 232 Mo. 511, 134 S.W. 555. The point is cognate to that above mentioned, and obviously is founded upon the same reasoning, which is that defendant will not be heard to complain of an error of which he is the sole beneficiary." Accord: State v. Murphy, Mo., 111 S.W.2d 132, 137; State v. Allison, 330 Mo. 773, 51 S.W.2d 51, 55, 85 A.L.R. 471; State v. Weagley, 286 Mo. 677, 228 S.W. 817, 818; State v. Lewis, 264 Mo. 420, 175 S.W. 60, 63; State v. Fields, 234 Mo. 615, 138 S.W. 518, 520. See, also, State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077, 1083; State v. Gardner, 356 Mo. 1015, 204 S.W.2d 716.

■ Defendant's remaining point in relation to the court having improperly limited the number of her peremptory challenges arises out of the following record facts: Twenty-four prospective jurors had been qualified on voir dire when the prosecuting attorney out of the hearing of such jurors, orally waived the charge of murder in the first degree contained in the information, and announced that the state would not ask an instruction submitting that grade of homicide. The defendant objected, and asked a continuance on the ground of surprise, and this was overruled. The court then made this record: "The record may show that in view of the fact that the state has waived its right to proceed on the first degree murder charge alleged in the information, and has indicated that it will proceed only on a second degree murder charge, and in view of the fact that we have qualified twenty-four jurors, it will not be necessary to qualify any further jurors, and the strikes can be made just as if

the information had originally contained the charge of second degree murder."

Defendant contends the prosecutor's waiver was not a proper, legal or effective method of amending the information or reducing the charge so as to authorize a panel of 24 qualified persons, instead of 30, the number prescribed in cases of murder in the first degree. That only 24 is the requisite number in second degree cases in a county such as Camden is not questioned, Sections 546.180, 546.210 RSMo 1949, V.A. M.S.; State v. Burnett, 357 Mo. 106, 206 S.W.2d 345, 349; State v. Yowell, 331 Mo. 716, 55 S.W.2d 991, 994; State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079, 1083–1084, so that if the prosecutor's waiver was efficacious for the purpose intended, defendant received the full measure of her rights as regards peremptory challenges. No reasons are advanced why the waiver should not be so regarded, nor is it suggested how defendant was or could have been prejudiced. The prosecutor's action was tantamount to a dismissal of the charge of first degree murder, and in any event constituted an election on the part of the state to try defendant for only a lesser grade of the offense charged. For this purpose it was unnecessary that an amended or substitute information be filed. The waiver operated as effectively as if the distinctive elements of first degree murder had been manually stricken from the information. It follows that the court did not improperly limit defendant's peremptory challenges, and the assignment is overruled.

The information and verdict are regular and sufficient. We have also examined the entries showing allocution, judgment and sentence, and while we cannot agree with the state that all of these "are in proper form and fully comply with the statutes (Sections 546.550 and 546.560, RSMo 1949, V.A.M.S.)," because patent irregularities appear with respect to allocution, but they are not of such nature as to require a reversal. To set the matter at rest, and to obviate the necessity of possible future action questioning the validity of the judgment, we think the effect of such irregularities should be considered and declared.

In passing, it is not amiss to remind that the sections of the statutes last above cited by the state have been supplanted by Supreme Court Rule 27.08. The same is true of the statute with respect to allocution, § 546.570, the subject matter of which is now covered by Rule 27.09. The record shows that upon allocution the court informed the defendant "that she is charged with the crime of murder, and having been found guilty as charged, the court fixes the punishment of said defendant at Five (5) years in the Missouri State Penitentiary." Neither statement is accurate in point of fact, because the conviction was for manslaughter, and the jury itself determined the punishment. Rule 27.09 requires that the court inform the defendant "of the verdict of the jury * * *." Obviously, this means informing both as to the offense found, and the punishment fixed. And it is to be recalled that the minimum punishment for murder is ten years, § 559.030, so that a sentence of only five years could not lawfully be imposed if the conviction were, in fact, for that offense. While there are deficiencies in the remaining portions of the judgment and sentence, it does adjudge that defendant "do undergo confinement in the Missouri Penitentiary for and during the period of five years." Under the circumstances, we believe this to be sufficient without further (and correctly) specifying her offense as manslaughter, or that the punishment is imposed in accordance with the verdict. It would be better to use an approved type of form correctly reflecting the proceedings. Precedents are ample.

The judgment should be, and it is affirmed.

All concur.